OPINION OF THE COURT
Kenneth L. Thompson, Jr., J.
Defendant and third-party plaintiff Karl Koch Erecting Corp. *492 (hereinafter referred to as Karl Koch) moved for an order granting summary judgment dismissing plaintiffs’ complaint.
Facts:
The following facts are alleged by plaintiff Jeffrey Howell in his May 4, 1999 examination before trial.
At around 1:00 p.m., on February 2, 1996, Howell allegedly slipped and fell on a crane deck and sustained injuries. Howell is licensed in New York City and New York State as a hoisting machine operator. At the time of the incident, he was employed by third-party defendant River Pile. His duties consisted of operating a 35-ton Grove hydraulic crane which was owned and leased from New York Crane. Beginning September 25, 1995, and at the time of the incident, River Pile was working on the Bronx River drawbridge, also known as Hunt’s Point Drawbridge.
At the work site, River Pile was a subcontractor for general contractor Karl Koch. River Pile’s function at the site was to drive caissons at the footings of the bridge for support, i.e., installing a “fender system.” The crane in question was situated atop a barge on the north side of the bridge. From January 15 through 24, 1996, the work at the site was halted due to severe weather. However, all snow and ice was removed from the crane deck each morning and on the morning of the incident. To prevent slipping, paint and skid pads were situated up the center of the crane deck and across the top of its fenders.
The crane deck was situated approximately six feet off the barge deck. It had four “exits” — one from each side and two off the back. The incident occurred on the right front fender which is just in front of steps exiting down the right side of the crane. Howell had never fallen before nor had he known of any other slip and fall incidents.
Before the incident, Howell had climbed up the left side of the crane to enter the cab. After working the crane for a while, Howell exited right from the operator cab door. He proceeded to the left front fender, stepped into the center well and then to the right front fender. Howell was walking to the exit steps situated on the right side of the crane. He proceeded in this direction because the position of the “house” prevented him from exiting off the rear. This was the first time he had walked on the front right fender that day.
As Howell was completing his step to the right fender, he saw red oil on its surface. Although he believed both feet landed *493 on skid pads, his feet came out from under him. He landed on the deck and slid down toward the steps before grabbing onto a handhold. He allegedly injured his neck, wrist, left arm, and the back of his head during the fall. Two of his coworkers, “Robbie” and “Dean,” were at the foot of the steps to which he was headed when he fell. After the incident, Howell emerged with oil all over the back of his jumpsuit.
Prior to the incident, Howell made numerous complaints about leaking oil. One such complaint was to the inspector of the work site, Anoop Kesnani, who later put drip pans under the leak. On January 30, 1996, Howell made a specific complaint to Bruce Snyder about oil on the entire deck. He made numerous complaints to Nicky Fiume (general foreman) and Phil Glaser (River Pile superintendent), as well as people in his crew. He also called New York Crane about six times concerning the leak. One such call to Sal Isalo, from New York Crane, was as early as October 13, 1995. Furthermore, on the Monday prior to the incident, Howell told Tom Gatley — the “operating engineer” and “oiler” — to check the oil. Gatley was responsible for all minor maintenance on the crane. Anything other than these minor procedures was done by New York Crane. Gatley informed Howell that he had filled the machine with five gallons of oil.
Howell had authority to shut down the machine if it became too dangerous to operate. He had shut down the crane once before when his “control rack” fell apart. He claims that he had spoken with several people about shutting down the machine due to the oil problem, but never actually did. Howell made a repair request to Bruce Snyder during the week before the incident. Early in the morning on February 2, 1996, he told Phil Glaser to call New York Crane to repair the crane.
Discussion:
Pursuant to CPLR 3212, on a motion for summary judgment, the moving party has the burden of giving sufficient evidence to eliminate any material issues of fact from the case (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). To defeat the motion, the defending party must produce by admissible evidence the existence of a factual issue requiring trial (Zuckerman v City of New York, 49 NY2d 557, 597 [1980]). Thus, the court’s function is issue finding rather than issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). Still, summary judgment is a drastic remedy and should not be granted if there is any doubt as to whether a triable issue exists (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]).
*494 In his summons and complaint, plaintiff relies on Labor Law § 241 (6), which requires owners and contractors to provide reasonable and adequate safety for workers. To make a case under section 241 (6), plaintiff must allege that defendant violated a rule or regulation of the Commissioner of Labor that sets forth a specific standard of conduct (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993]). By its terms, section 241 (6) is nondelegable and imposes liability upon a general contractor for the negligence of a subcontractor, in the absence of control, supervision, or even notice (Rizzuto v Wenger Contr. Co., 91 NY2d 343, 348 [1998]). However, violation of regulations under section 241 (6) is only some evidence of negligence which a jury could take into consideration and not negligence in itself (id. at 351). In the instant case, plaintiff supplements section 241 (6) with several industrial regulations, including 12 NYCRR 23-1.7 (d) and 23-8.1 (b) (1), (2) and (5).
The question of whether 12 NYCRR 23-8.1 (b) (1), (2) and (5) are specific enough to uphold a section 241 (6) claim is one of first impression in this Department. In determining this, we must look to the guidelines set forth in Ross v Curtis-Palmer Hydro-Elec. Co. (81 NY2d 494). According to Ross, “allegations * * * which rely on claimed failures to measure up to such general regulatory criteria as ‘adequate,’ ‘effective’ and ‘proper,’ are not sufficient to give rise to a triable claim for damages under Labor Law § 241 (6)” (id. at 502). For example, 12 NYCRR 23-8.1 (a) (which is not a part of this action) has been deemed insufficient to uphold a section 241 (6) claim (Goss v State Univ. Constr. Fund, 261 AD2d 860, 861 [4th Dept 1999], lv dismissed in part and denied in part 94 NY2d 847 [1999]). That provision failed because it merely stated a general safety requirement concerning crane stability (id.). Similarly, 12 NYCRR 23-8.1 (b) (2) and (5), which require written inspection and safety guides posted at work sites, offer general safety requirements which are not sufficient to raise a triable issue under section 241 (6).
However, 12 NYCRR 23-8.1 (b) (1), which requires mandatory monthly inspection of cranes at work sites, is specific enough to raise a triable issue. First, requiring monthly inspection contributes to overall safety of the work site. Second, inspection may prevent numerous crane injuries by revealing crane defects which might be otherwise undetectable. Third, the regulation cites “all blocks, shackles, sheaves, wire rope, connectors, the various devices on the mast or boom, hooks, *495 controls and braking mechanisms” as items to be inspected (12 NYCRR 23-8.1 [b] [1]). That group of items lend to the overall integrity of the crane, and an oil leak coming from the crane’s hydraulic mechanism would certainly fall therein. The fact that an injury resulted from a slip and fall on the oil and not some severe malfunction in the hydraulic mechanism seems to be irrelevant. Therefore, this court holds that 12 NYCRR 23-8.1 (b) (1) is sufficient to uphold a section 241 (6) claim. But, despite this finding, whether such inspection has taken place in this case is unclear. Although the crane had allegedly spilled oil onto the crane deck for months, plaintiffs testimony reveals that a repairman from owner New York Crane (as noted by defendant Karl Koch) came out on January 26, 1996, within one month of plaintiffs accident, to fix the crane. But, whether this repair constitutes an inspection, or whether such repair was successful or sufficient to meet 12 NYCRR 23-8.1 (b) (1) are questions for a jury to answer.
The plaintiff also relies on 12 NYCRR 23-1.7 (d), which requires relief from slipping hazards, to supplement his section 241 (6) claim. The Court of Appeals has previously held that 12 NYCRR 23-1.7 (d) mandates a distinct standard of conduct which is sufficient to give rise to a triable claim for damages under section 241 (6) (Rizzuto v Wenger Contr. Co., 91 NY2d at 351). However, whether a crane deck is covered by the regulation is another question. In Whalen v City of New York, the plaintiff fell down a staircase on the way to a work site (270 AD2d 340 [2d Dept 2000]). The Court held the staircase to be a “floor, passageway, walkway, scaffold, platform or other elevated working surface” within the regulation (id. at 342). The Court further stated, “[Responsibility * * * extends not only to where the * * * work was actually being conducted, but to the entire site, including passageways utilized in the provision and storage of tools, in order to insure the safety of laborers going to and from the points of actual work” (id. at 342, citing Sergio v Benjolo N.V., 168 AD2d 235 [1st Dept 1990]; see also Roppolo v Mitsubishi Motor Sales of Am., 278 AD2d 149, 150 [1st Dept 2000] [where the Court held walking on a roof, especially one used in the ordinary course of a building occupant’s business, does fall within the regulation]). But contrast those holdings to O’Gara v Humphreys & Harding (282 AD2d 209 [1st Dept 2001]), where the Court held that 12 NYCRR 23-1.7 (d) does not apply because the injury took place in an open area exposed to the elements.
With respect to vehicles, two cases exist which elicit conflicting views on whether 12 NYCRR 23-1.7 (d) may apply in this *496 case. In Bond v York Hunter Constr. (270 AD2d 112 [1st Dept 2000], affd 95 NY2d 883), the Court held that the vehicle track on which plaintiff slipped was not a floor, passageway, walkway, scaffold, platform or other elevated working surface within the meaning of 12 NYCRR 23-1.7 (d). However, in Cafarella v Harrison Radiator Div. of Gen. Motors (237 AD2d 936 [4th Dept 1997]), the Court held that slipping off the rear bed of a dump truck was within the regulation.
Despite their seemingly contradictory holdings, the above cases offer a guide for resolving the present case. First, plaintiff in Bond chose to come off the vehicle by way of its track. In the present case, Howell slipped on a fender of a crane deck on his way to one of its specified exits. While a vehicle’s track is certainly not a “floor, passageway, walkway, scaffold, platform or other elevated working surface,” the path taken on a crane deck to an exit might be. Second, although plaintiff in Cafarella was not exiting his vehicle at the time of his fall, the Court recognized the rear bed of a dump truck as a possible “floor, passageway, walkway, scaffold, platform or other elevated working surface.” In light of Cafarella, the present case, in which plaintiff walked on the crane deck to a designated exit, has some merit.
Plaintiff also testified at his deposition that various tasks, including checking the cooling system and oil as well as releasing the boom’s safety catch, are done at certain positions on the crane deck. Furthermore, the manufacturer placed skid pads over the entire crane deck. Therefore, evidence exists that the entire deck of the crane is used during normal work. In light of the foregoing facts and cases, this court holds that the crane deck on which plaintiff fell does constitute a “floor, passageway, walkway, scaffold, platform or other elevated working surface” within the meaning of 12 NYCRR 23-1.7 (d).
Therefore, defendant’s motion for summary judgment dismissing plaintiffs’ action under Labor Law § 241 (6) is denied.