Streeter v Kingston (2004 NY Slip Op 50170(U))

[*1]

Streeter v Kingston

2004 NY Slip Op 50170(U)

Decided on March 16, 2004

Supreme Court, Onondaga County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 16, 2004

Supreme Court, Onondaga County
 DAVID S. STREETER and LAURA J. STREETER, Plaintiffs,
against
KIMBERLY A. KINGSTON (HARTMAN) and COUNTY OF ONONDAGA, Defendants.
Index No. 98-1955

For the Plaintiffs: DeSantis & DeSantis By: Michael V. DeSantis, Esq. Of Counsel
For the Defendants: Sugarman Law Firm, LLP By: Sandra L. Holihan, Esq. Of Counsel for K. Kingston Cramer, Smith & Leach, P.C. By: David E. Leach, Esq. Of Counsel for County of Onondaga

Edward D. Carni, J.
Introduction
Plaintiffs, David S. Streeter and Laura J. Streeter, bring this motion seeking an order of summary judgment on the issue of liability as against defendants, Kimberly A. Kingston and The County of Onondaga, and directing that the matter proceed to an inquest on the limited issue of plaintiffs' damages.
Defendant Kingston cross-moves for an order compelling the plaintiffs to respond to discovery demands and to provide defendant Kingston with a "responsive" bill of particulars.
The County opposes plaintiffs' motion but has not cross-moved for any form of relief at this juncture.
Factual Background
Plaintiff David Streeter was injured on September 18, 1997 at approximately 8:04 a.m. when a motor vehicle operated by defendant Kingston in the Town of Clay, County of Onondaga was traveling east on Buckley Road and turned left in a northerly direction onto Bear Road. Kingston's vehicle struck the plaintiff who was kneeling on the pavement in the center of the intersection performing construction work. At the time of the accident, David Streeter was employed by Santaro Industries, Inc. as a laborer and was working on the pavement surface. There is no dispute that both Buckley and Bear Roads were owned by the County at the time of the accident.
Thereafter, plaintiffs commenced this action advancing a negligence cause of action [*2]against defendant Kingston and a Labor Law § 241 (6) cause of action against the County. [FN1] Additionally, plaintiffs' complaint advances a loss of consortium cause of action on behalf of Laura J. Streeter as spouse of David Streeter. The merits of this derivative cause of action are not at issue at this time.
Plaintiffs' Labor Law § 241 (6) cause of action is premised upon 12 NYCRR 23-1.29 (the "Industrial Code") which provides in pertinent part as follows:
 § 23-1.29 Public vehicular traffic.
 "(a) Whenever any construction, demolition or excavation work is being performed over, on or in close proximity to a street, road, highway or any other location where public vehicular traffic may be hazardous to the persons performing such work, such work area shall be so fenced or barricaded as to direct such public vehicular traffic away from such area, or such traffic shall be controlled by designated persons." (Emphasis supplied).
There is no dispute that vehicular traffic was not being directed or controlled by a designated person or flag person at the time of the accident.
The County does not dispute that David Streeter was performing the type of work embraced within Labor Law § 241 and 12 NYCRR 23-1.29. Nor does the County dispute that Section 23-1.29 of the Industrial Code is a sufficiently specific safety regulation to support a Section 241(6) cause of action (see, e.g., Carpenter v 149 Edison St., Inc., 269 AD2d 751 [4th Dept 2000]).
Plaintiff's Motion for Summary Judgment under Labor Law § 241(6)
The real issue, insofar as the County is concerned, is whether the work area was sufficiently "fenced or barricaded" as required by Section 23-1.29.
At the time of the accident, four (4) 29" high reflective cones were being used to create and separate a work zone from the trafficked portion of the roadway. [FN2] David Streeter was kneeling upon the pavement and working within the zone designated by these cones. As defendant Kingston attempted to make a left hand turn from Buckley Road onto Bear Road, her vehicle entered the work zone and struck David Streeter within that zone.
According to the deposition testimony of defendant Kingston, she was familiar with the subject intersection and the construction that was going on at the site (Kingston Tr at 7). The left [*3]turning lane on Buckley Road was blocked off with barrels all the way to the intersection (Kingston Tr at 10-11). As Kingston approached the intersection, there were two cars in front of her vehicle and Kingston brought her vehicle to a complete stop as the traffic signal controlling her lane was red (Kingston Tr at 11). Kingston could see construction workers in the vicinity of the intersection when she came to a stop on Buckley Road at the red-light but she did not see David Streeter (Kingston Tr at 15-16).
When the light turned green, the two vehicles in front of Kingston proceeded to make left-hand turns from Buckley to Bear Road without incident. Kingston was following behind these two vehicles (Kingston Tr at 16-17). As Kingston proceeded to make her left hand turn, she heard some "rustling of metal" under her car and she stopped her vehicle (Kingston Tr at 19-20). When she exited her vehicle, she observed David Streeter near the driver's side of the front of her vehicle and he was he was "lying down on the ground and he was in pain, screaming" (Kingston Tr at 22-23). Kingston did not observe the orange cones in the intersection because "[she] couldn't see the intersection" (Kingston Tr at 27) and because the sun was in her eyes (Kingston Tr at 37).
As a result of the accident, Kingston was issued tickets for violating Vehicle and Traffic Law Sections 1163(a) (Improper turn) and 1160(d) (Failure to turn as marked). Kingston subsequently entered a plea of "guilty" to Vehicle and Traffic Law § 1160(d) and the §1163(a) charge was dismissed.
In support of their motion for summary judgment, plaintiffs submit the affidavit of a licensed engineer, John A. Serth, Jr., P.E. who opines that:
" the construction area where the plaintiff was working was not constructed, equipped, guarded, arranged, operated and conducted so as to provide reasonable and adequate protection and safety to the plaintiff as required by section 241, subdivision six, of the Labor Law of the State of New York."
In explaining this conclusory opinion, Mr. Serth indicates that there were three deficiencies in the work area which can be summarized as follows:
1. The fencing or barricading at the work area was unsafe, improper and inadequate because it failed to provide a proper traffic path around the plaintiff's work area as required by the New York State Manual of Uniform Traffic Control Devices ("MUTCD") at Section 300.3 (f).
2. The same section of MUTCD requires that traffic control devices should not be obscured by construction equipment or vehicles and the pylons used in this work area were only 30 inches high, or, lower than the front hoods of vehicles passing through the construction area.
3. The only method to safely channel traffic through this work area would be to position a designated person to control traffic flow through the intersection and that was not done here as required by section 23-1.29 (b).
[*4]
In opposition, the County submits the affidavit of a registered professional engineer, James W. Hanks, Jr. Mr. Hanks offers an opinion that the barricades utilized on the day of the accident were "in all respects sufficient and appropriate."
In support of this conclusory opinion, Mr. Hanks indicates that:
1. The County's Traffic Control Plan satisfied section 241(6) of the Labor Law and 12 NYCRR 23-1.29.
2. The 29 inch pylon cones were sufficient to satisfy the five requirements of MUTCD and "cones" are one of the enumerated "channelizing" devices called for in Section C, 6C-1 of MUTCD.
3. MUTCD requires only a 28-inch cone in high-speed areas and this was not a high-speed area and therefore, the use of a larger cone exceeded the MUTCD recommendation.
Thus, it is apparent that there are divergent and inapposite expert opinions concerning the adequacy of the County's compliance with the requirements of the Labor Law and the Industrial Code and whether the work zone provided reasonable and adequate protection to plaintiff David Streeter.
However, in this court's view, this is not the end of the inquiry insofar as a determination of plaintiffs' summary judgment motion against the County is concerned. The record before the court does not address the issue of whether pylons, cones or other similar "channelizing" devices constitute a "fence or barricade" as that term is used within the Industrial Code and by reference and incorporation, the Labor Law. The parties' motion papers do not address the question of whether the placement of devices that "channel" vehicular traffic away from a work site is sufficient to satisfy the Labor Law and the "fence or barricade" requirement of § 23-1.29 of the Industrial Code, or whether something more is required such as a device to withstand the forces of an errant or negligently operated vehicle intruding into the work zone. The real issue, insofar as the Labor Law and the Industrial Code are concerned, is whether these provisions require more at this work site than the proper placement of MUTCD approved "channeling" devices such as plastic cones.
In analyzing this issue, the court is mindful that the Manual of Uniform Traffic Control Devices is not without legislative or regulatory authority. In fact, the adoption of MUTCD is legislatively mandated by Vehicle and Traffic Law § 1680 which provides as follows:

 § 1680. Department of transportation to adopt manual of uniform traffic-control devices
"(a) The department of transportation shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways within this state. Such uniform system shall correlate with and so far as practical conform to such nationally [*5]accepted standards."
In accordance with this statutory mandate, the Department of Transportation promulgated Title 17 NYCRR Chapter V, Uniform Traffic Control Devices, as part of the official rules and regulations of the department.
Although neither engineering expert referred to Part 292 of Title 17, the court must take judicial notice of applicable provisions of the Official Code of Rules and Regulations of the State of New York which may assist the court in reaching its determination.
Here, 17 NYCRR § 292.2 , Barricades., sets forth a detailed and descriptive set of regulations concerning the use of "barricades" at highway work zones. In particular, § 292.2 provides as follows:

"(a) Application. (1) Barricades are for use to physically exclude traffic from all or part of a roadway. They are for use to define a path to be used by traffic, and to separate it from portions of the highway being used or occupied for other purposes. They provide more positive traffic separation and target value than other channelizing devices.
****
(b) Design. (1) General. Barricades are portable or fixed devices consisting of from one to three diagonally striped horizontal rails. Barricades with orange and white reflectorized stripes are for use in highway work zones."
Section 292.2 contains numerous other subsections which detail the requirements for barricade dimensions, support, ballast and location. There are diagrams showing the proper design, coloring and markings for different types of barricades.
In separate sections, MUTCD sets forth requirements for the design and use of "Drums" or barrels (see, 17 NYCRR §292.3) and "Cones" (see, 17 NYCRR § 292.5). Section 292.5, in reference to the use of "cones," states as follows:

(a) Application. (1) Cones are for use to define the proper travel path along a roadway, and discourage improper travel path choices by drivers. They may be placed on a roadway or shoulder, or be rigidly attached for extended use. They are highly visible, very portable, and present small risk of damage or injury if struck by an errant vehicle; but provide little separation of traffic flow from adjacent areas occupied by other objects, machinery, or workers. A series of cones can effectively prevent lane changing and passing maneuvers." (Emphasis supplied).
In reviewing these sections, it is clear that, insofar as MUTCD is concerned, a "drum" is not a barricade and a "cone" is not a barricade.
17 NYCRR Part 302, Subchapter H Illustrations, contains numerous illustrations [*6]concerning the use of barricades in various highway work zone applications.
Section 302.2 illustrates the use of barricades with other signage and these drawings demonstrate vividly that a "barricade" is not a "cone."
The engineering experts for plaintiffs and the County both base their opinions on Labor Law and Industrial Code compliance on standards contained within MUTCD. In other words, both experts agree that MUTCD contains the controlling and appropriate standards for interpretation and application of the "fence or barricade" requirement in Industrial Code Section 23-1.29.
Therefore, this court finds that the cones placed at the work zone were insufficient to satisfy the "barricade" requirement of Industrial Code § 23-1.29. MUTCD makes it clear that a "cone" is not a "barricade."
Additionally, the County has made no attempt to argue that the cones as placed constituted a "fence" under the Industrial Code. In fact, a "cone" and a "fence" are two distinct and unique devices. The court has reviewed all of the applicable provisions of the Industrial Code (12 NYCRR 23) and there is no definition of the term "fence" within this set of rules and regulations. MUTCD does not define, or so much as refer to, the term "fence" in reference to any form of traffic channeling or control device. MUTCD does, however, clearly define and describe both a "cone" and a "barricade." It is clear to this court that neither device is a "fence" under any common or generally accepted definition or use of that term. [FN3]
 Therefore, this court determines, as a matter of law, that a "cone" or series of "cones" is not a "fence" for purposes of compliance with the Labor Law and the Industrial Code.
 Accordingly, the court finds that the County violated Industrial Code § 23-1.29 as a matter of law by failing to properly "fence "or "barricade" plaintiff David Streeter's work zone.
However, the violation of this regulation is not the end of the Labor Law § 241(6) analysis insofar as the County's ultimate liability to plaintiffs is concerned.
Labor Law § 241(6) Liability Analysis The issue of whether there has been compliance with Labor Law § 241(6) differs significantly from the analysis of a Labor Law § 240 action. In contrast to Section 240, a Section 241(6) action does not involve a strict liability analysis. Rather, the traditional principles and elements of statutory violation and negligence theories must be analyzed and satisfied in order [*7]for a plaintiff to make out a prima facie case (see, Cammon v City of New York, 95 NY2d 583 [2000] [Section 241(6) allows for liability predicated upon fault ]).
Labor Law § 241(6) does not impose absolute liability for any injury arising from its breach. Rather, depending upon the procedural posture presented, once it has been sufficiently alleged or proven that a concrete specification of the Industrial Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury. If proven, the general contractor or the owner, as the case may be, is vicariously liable without regard to his or her fault (see, Rizzuto v Wenger Construction Corp., 91 NY2d 343 [1998]).
A violation of the Industrial Code, even if admitted, does not establish negligence as a matter of law but is merely some evidence to be considered on the question of defendant's negligence (see, Puckett v County of Erie, 262 AD2d 964, 965 [4th Dept 1999]; Sacchetti v Vasile Construction Corp., 254 AD2d 777 [4th Dept 1998]). There is a clear and significant distinction between a violation of an administrative regulation promulgated pursuant to a statute, and a violation of an explicit provision of a statute proper; while the latter gives rise to absolute liability without regard to whether the failure to observe special statutory precautions was caused by the fault or negligence of any particular individual, the former "is simply some evidence of negligence which the jury could take into consideration with all the other evidence bearing on that subject" (see, Rizzuto v Wenger Construction Corp., 91 NY2d 343, 349 [1998] quoting Allen v Coultier Construction Corp., 44 NY2d 290, 298 [1978]).
Once it has been determined that a violation of the Industrial Code has occurred, the jury must still be charged with determining whether there was a failure to use reasonable care and if so, whether such failure was a substantial factor in causing plaintiff's injuries (see, NYPJI 2:216A, Injured Employee - Violation of Industrial Rule - Vicarious Liability - Nondelegable Duty of Owners/Subcontractor - Labor Law § 241 [6]).
Here, in accordance with this decision, the jury will be instructed at the time of trial that there was a failure to comply with Industrial Code § 23-1.29 and that this is to be considered as some evidence of negligence against the County (see, O'Leary v Raymond LeChase, Inc., 125 AD2d 991, 992 [4th Dept 1986] [It is error to instruct the jury that a breach of the Industrial Code creates liability]). [FN4]
However, plaintiffs' motion for summary judgment as against the County on the question of whether the County is liable to plaintiffs for a violation of Labor Law § 241(6) is denied. There are conflicting affidavits from engineering experts addressing the issue of whether the plaintiff's work zone provided reasonable and adequate protection and safety to the plaintiff as required under Labor Law § 241(6). These affidavits present and create a material question of fact. Under these circumstances, the ultimate issues of whether the County used reasonable care [*8]in marking, designing and establishing this work zone and whether any breach of such duty was a proximate cause of David Streeter's injuries are jury questions to be determined at the time of trial (see NYPJI3d 2:216A).
Plaintiffs' Motion for Summary Judgment on the Issue of Liability as Against Defendant Kingston
Plaintiffs seek summary judgment against defendant Kingston on the ground that Kingston was negligent in the operation of her vehicle as a matter of law and that such negligence was a proximate cause of plaintiff David Streeter's injuries. Plaintiffs also allege that there is no proof of any comparative fault on the part of David Streeter that would bar summary judgment in favor of plaintiffs at this juncture.
In support of their motion against Kingston, plaintiffs point to the undisputed fact that Kingston entered a plea of "guilty" to a violation of Vehicle and Traffic Law § 1160(d) (Failure to turn as marked).
The court is mindful of the significant distinction between a plea of guilty to a traffic offense and a finding as a matter of law in a negligence action that a defendant violated a statute in the Vehicle and Traffic Law. Kingston argues that a plea of guilty to a traffic violation is only "some evidence of negligence, but does not establish negligence." In this regard, the rule is well settled that a plea of "guilty" to a traffic offense does not establish negligence. A person who pleads guilty to a traffic offense is permitted to explain the reasons for the plea, and it is for the jury to decide what weight, if any, to give to the testimony (see, Guarino v Woodworth, 204 AD2d 391 [2d Dept 1994] citing Ando v Woodberry, 8 NY2d 165, 171 [1960]). However, if the defendant has plead guilty to a traffic violation and no excuse or explanation is offered by defendant, a jury verdict of no negligence on the part of the defendant would be against the weight of the evidence (see, Miszko v Luma, 284 AD2d 641 [3rd Dept 2001]).
A guilty plea to a traffic infraction, together with other evidence surrounding the circumstances of the accident, can provide the basis for a finding of liability as a matter of law in the summary judgment context (see, McGraw v Ranieri, 202 AD2d 725 [3rd Dept 1994]). However, a guilty plea, standing alone does not establish negligence per se. Indeed, in Guardino, supra, the defendant had plead guilty to a traffic offense as a matter of convenience. Nonetheless, the jury absolved the defendant of liability for the accident and the verdict was upheld by the Appellate Division, Second Department (Id. at 392).
On the other hand, it is well settled that a defendant's unexcused violation, of the Vehicle and Traffic Law, whether there has been a plea of guilty or not, constitutes negligence per se and, if proven, cannot be disregarded by the jury (Devoe v Kaplan, 278 AD2d 734, 735 [3rd Dept 2000]; 1A NYPJI3d 2:26, Statutory Standard of Care-Vehicle and Traffic Law). However, a jury may find a violation of the Vehicle and Traffic Law but simultaneously find that such violation was excused (Stalikas v United Materials, L.L.C., 306 AD2d 810, 811 [4th Dept 2003] ["Thus, even in the event that the jury found that defendants violated the statute, it is evident that, based upon the nonnegligent explanations of defendants credited by the jury, the jury would have [*9]found that any violation was excused."]).
The law as to what constitutes an "excused violation" is not well developed. One of the earliest cases on this issue, Petosa v City of New York, 52 AD2d 919 [2d Dept 1976], indicates that the violation is "unexcused" unless observance of a statute would subject one to more imminent danger or unless the statute has been justifiably violated because of some emergency. This principle has been adopted into the New York Pattern Jury Instructions at PJI3d 2:27, Statutory Standard of Care - Justifiable Noncompliance With Statute. Aranzullo v Seidell, 96 AD2d 1048 [2d Dept 1983], stands for the proposition that a violation of a statute may be excused where one exercised reasonable care in an effort to comply (Aranzullo, 96 AD2d at 691 citing Alongi v Beuter, 286 AD 990 [4th Dept 1955]). In Aranzullo, the Appellate Division, Second Department indicated that defendant's failure to comply with the Vehicle and Traffic Law could be excused by evidence that he had exercised reasonable care under the inclement circumstances in an effort to comply with the statutory provisions (Id. at 691 [Defendant alleged to have crossed over center line and failed to reduce speed when approaching a curve in violation of Vehicle and Traffic Law § 1180 and § 1120]).
 In Tomaselli v Goldstein, 104 AD2d 872 [2d Dept 1984], the Second Department held that a defendant driver, whose vehicle had jumped a divider and crossed over the center lane, was permitted to present evidence of his excuse of being sideswiped by another car to the jury and the jury should be instructed to consider any explanation by defendant. It has also been held that an unexpected brake failure might, in certain circumstances, provide a satisfactory excuse for failing to stop at a stop sign (see, Stanisz v Tsimis, 96 AD2d 838 [2d Dept 1983] ["It is incumbent upon the offender to come forward with evidence showing that a problem with the brakes was unanticipated and that he had exercised reasonable care to keep them in good working order"]).
Here there is ample evidence in this record in the form of the expert engineering opinion submitted by plaintiffs that the left-hand turning lane confronting Kingston was not properly marked in that, among other things, the cones marking the turning lane were not high enough to be seen by a motorist such as Kingston. The court is of the view that this situation is not far removed from the motorist who fails to stop at an obscured stop sign. As noted in the commentary to 1A NYPJI3d 2:80B, the obligation of a driver on a subordinate highway to stop, imposed by VTL § 1142(a) and § 1172(a), does not apply if the sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person (1A NYPJI3d 2:80B, commentary at p. 413-414 quoting VTL § 1110[b]) (Emphasis supplied).
Here, the statute allegedly violated by Kingston (V& T § 1160 [d]) requires turns to be made in accordance with "markings" placed in an intersection that "direct that a different course from that specified in this section be traveled by vehicles turning at an intersection."
"Markings" are included within the definition of "Traffic control devices" in Vehicle and Traffic Law § 153. Traffic control devices can only be placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic. Motorists are required only to obey traffic control devices placed in accordance with the [*10]provisions of the Vehicle and Traffic Law (Vehicle and Traffic Law § 1110 [a]). The Vehicle and Traffic Law mandates the promulgation of the MUTCD (Vehicle and Traffic Law § 1680).
Here, the record contains a sharp factual dispute, through conflicting expert opinion, on the issue of compliance with MUTCD in the marking of this intersection and work zone. If the jury, after resolving the divergent expert opinions, concludes that there was noncompliant marking of the intersection and work zone, Kingston's alleged failure to turn as marked could be found by the jury to be an "excused" violation or no violation at all. In light of all the foregoing, the court finds that the relevant and admissible evidence concerning whether the work zone was properly "marked" should be submitted to the jury for its determination whether Kingston violated Vehicle and Traffic Law § 1160(d). The jury should also be permitted to hear evidence upon and decide the question of whether Kingston's alleged traffic violation, if found by the jury, was an "excusable violation" under the circumstances. Lastly, the jury should also be permitted to hear any explanation that defendant Kingston offers at trial for having plead guilty to a violation Vehicle & Traffic Law § 1160 (d).
Therefore, plaintiffs' motion for summary judgment on the issue of liability as against defendant Kingston is denied.
Defendant Kingston's Discovery Motion
In opposition to the cross-motion of defendant Kingston, plaintiffs submit a copy of plaintiffs' bill of particulars which was provided to Kingston's defense counsel in May of 1999. Although counsel for defendant Kingston alleges that this bill of particulars was not "responsive," there is nothing in Kingston's papers which indicates how plaintiffs' bill was substantively "unresponsive." [FN5] Moreover, plaintiffs' counsel, in opposition to Kingston's cross-motion, affirms that plaintiffs have responded to all of Kingston's omnibus discovery demands and provided the court with these responses which were served upon Kingston's counsel in June of 1999. Kingston has not indicated in any fashion how plaintiffs' responses are inadequate.
Therefore, defendant Kingston's cross-motion for an order compelling discovery responses and a bill of particulars from plaintiffs is denied.
This decision is based upon the following written submissions: plaintiffs' Notice of Motion for summary judgment dated January 18, 2002; affidavit of David S. Streeter sworn to on January 2, 2002 together with Exhibits 1-4; affidavit of John A. Serth, Jr., P.E. sworn to on September 15, 2001 together with Exhibits annexed thereto; pleadings submitted by plaintiffs' counsel by written submission dated January 18, 2002; deposition of David S. Streeter held on November 21, 2000; deposition of Laura J. Streeter held on November 21, 2000; deposition of Kimberly Kingston Hartman held on November 21, 2000; Notice of Cross-motion by defendant Kimberly A. Kingston dated February 27, 2002; Attorney Affidavit of Sandra L. [*11]Holihan, Esq. sworn to on February 27, 2002 with Exhibits A-L annexed thereto; defendant Kingston's Memorandum of Law dated February 27, 2002; affidavit of James William Hanks, Jr. in opposition to summary judgment motion sworn to on March 11, 2002 together with Exhibits A and B annexed thereto; affidavit of Susan R. Katzoff, Esq. in opposition of summary judgment motion sworn to on March 12, 2002 together with Exhibits A - D annexed thereto; reply affidavit of Michael V. DeSantis, Esq. sworn to on March 14, 2002 together with plaintiffs' Verified Bill of Particulars dated May 27, 1999 and the letter of Michael V. DeSantis, Esq. dated June 3, 1999 annexed thereto.
This constitutes the decision of the Court. Counsel for defendant Kingston to submit proposed order on notice in accordance with this decision.
Enter
Decision Date: March 16, 2004
Footnotes

Footnote 1: Labor Law § 241 (6) provides that "All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein "

Footnote 2: There is no dispute that large plastic drums or "barrels" were also being used to channel traffic at this construction site. However, there is also no dispute that the work zone within which David Streeter was working was bounded only by the four (4) traffic cones.

Footnote 3: The term "fence" is defined as "a structure erected around or by the side of any open space to prevent passage in or out; essentially a structure enclosing or separating yards, fields, etc. The term is commonly applied to the various forms constructed of posts, carrying boards, rails, pickets or wire or to iron structures consisting of vertical or horizontal bars of open work" Webster's New Twentieth Century Dictionary, Unabridged, 2nd ed.

Footnote 4: Pattern Jury Instruction 2:216A permits the jury to find that the violation of the Industrial Code did not constitute a failure to use reasonable care, or if there was a failure to use reasonable care, it was not a substantial factor in causing plaintiff's injuries. 

Footnote 5: Kingston alleges that the numbered responses in plaintiffs' bill do not match up to the numbered requests. There is no allegation that plaintiffs' bill fails to provide the substantive information required under CPLR 3042. This court has carefully reviewed plaintiffs' bill and finds it to be comprehensive and fully compliant with the statute. The court had no difficulty in correlating the boilerplate requests in defendant Kingston's demand with plaintiffs' responses.