OPINION OF THE COURT
 

 Levine, J.
 

 This action arises out of a worksite accident which occurred at the New York City Transit Authority Bus Terminal on 126th Street, in Manhattan. At the time of the accident, the 126th Street Terminal was undergoing rehabilitation, with various phases of construction, concrete and mechanical installations and excavations taking place in different areas of the depot. The bus depot, owned and operated by the Transit Authority,
 
 *347
 
 remained fully operational during this period. Pursuant to a contract with the Transit Authority, L.A. Wenger Contracting Co., the general contractor, was to accomplish the rehabilitation work at the depot, and Milo Mechanical, a subcontractor of defendant, was to perform certain plumbing and mechanical work. Plaintiff John Rizzuto was employed by Milo Mechanical as a plumbing foreman and supervisor.
 

 There was evidence adduced in pretrial discovery that on the date of the accident, plaintiff and an assistant, also employed by Milo, were removing and replacing a submersible pump in the fuel station area of the bus depot. Two Transit Authority employees, working approximately 10 to 12 feet to his left, informed plaintiff that they were planning to pressure-test an underground tank for leakage. Plaintiff subsequently observed an eruption of fluid from the area in which the Transit Authority workers were testing the tank and, in the course of his installation, plaintiff and his immediate work area were suddenly sprayed with diesel fuel. According to plaintiffs deposition, the fuel “sprayed all over [him] and the floor,” covering his arms, chest, head and clothing. Upon being sprayed, plaintiff stood up and, as he attempted to leave the work area to clean himself off, “both of [his] feet slipped out from underneath [him] at the same time” and he fell, allegedly sustaining serious personal injuries.
 

 Plaintiff commenced the instant action against the general contractor (defendant L.A. Wenger), asserting causes of action sounding in common-law negligence, and violations under Labor Law § 200 (1) and § 241 (6). Plaintiff alleged that defendant violated certain specific safety rules and regulations, and that defendant’s negligence caused, allowed or permitted an unsafe and hazardous condition to be present in the depot. Plaintiff also claimed that defendant retained supervision and control of the construction site throughout the rehabilitation, and that its failure to exercise such supervision and control, so as to provide him with reasonable and adequate protection, was the proximate cause of the injuries he sustained.
 

 Supreme Court granted defendant’s motion for summary judgment in its entirety. It found no factual basis for liability under plaintiff’s common-law negligence or Labor Law § 200 claims because the evidence failed to establish that the general contractor exercised supervisory control over the construction site or the work activity bringing about the injury. The court also found no merit in plaintiffs Labor Law § 241 (6) cause of action, concluding that neither the provisions of the State
 
 *348
 
 Industrial Code (12 NYCRR part 23) nor the various Federal Occupational Safety & Health Administration (OSHA) regulations (29 CFR ch XVTI-Labor), upon which plaintiff relied, were applicable to the instant claim.
 

 The Appellate Division affirmed (237 AD2d 500). That Court agreed with Supreme Court’s reasoning regarding the lack of merit to plaintiff’s common-law negligence and Labor Law § 200 causes of action. With respect to plaintiff’s claim under Labor Law § 241 (6), the Court also found dismissal warranted because “the evidence demonstrates that the [general contractor]
 
 did not have actual or constructive notice of any dangerous condition which may have caused the accident” (id.,
 
 at 501 [emphasis supplied]). We granted plaintiff leave to appeal, and now reverse the Appellate Division order and reinstate all three causes of action.
 

 I.
 

 We conclude that the Appellate Division erred in dismissing the Labor Law § 241 (6) cause of action based on its determination that such a claim is defeated by the absence of notice, to the general contractor, of the hazardous condition causing the injury. We also conclude that Supreme Court erred in finding that none of the regulatory provisions upon which plaintiff relied set forth the requisite specific standard giving rise to a nondelegable duty under section 241 (6).
 

 Labor Law § 241 (6), by its very terms, imposes a
 
 nondelegable
 
 duty of reasonable care upon owners and contractors “to provide reasonable and adequate protection and safety” to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed
 
 (see also, Ross v Curtis-Palmer Hydro-Elec. Co.,
 
 81 NY2d 494, 501-502;
 
 Long v Forest-Fehlhaber,
 
 55 NY2d 154, 160,
 
 rearg denied
 
 56 NY2d 805;
 
 Allen v Cloutier Constr. Corp.,
 
 44 NY2d 290, 299-300,
 
 rearg denied
 
 45 NY2d 776). Indeed, the history underlying section 241, as amended, clearly manifests the legislative intent to place the
 
 “ultimate responsibility
 
 for safety practices at building construction jobs where such responsibility actually belongs,
 
 on the owner and general contractor”
 
 (1969 NY Legis Ann, at 407-408 [emphasis supplied];
 
 see also, Allen v Cloutier Constr. Corp.,
 
 44 NY2d, at 300,
 
 supra).
 

 Deeming this responsibility to be “absolute”
 
 (Allen v Cloutier Constr. Corp., supra,
 
 at 300), we held that section 241 (6) imposes liability upon a general contractor
 
 for the negligence of a subcontractor,
 
 even in the absence of control or supervision
 
 *349
 
 of the worksite
 
 (see, id..; see also, Ross v Curtis-Palmer Hydro-Elec. Co., supra,
 
 at 502;
 
 Long v Forest-Fehlhaber, supra,
 
 at 159-160). We also recognized, however, the “clear distinction” between a violation of an administrative regulation promulgated pursuant to statute, and a violation of an explicit provision of a statute proper: while the latter gives rise to absolute liability without regard to whether the failure to observe special statutory precautions was caused by the fault or negligence of any particular individual, the former is “ ‘
 
 “simply some evidence of negligence
 
 which the jury could take into consideration with all the other evidence bearing on that subject” ’ ”
 
 (Allen v Cloutier Constr. Corp., supra,
 
 at 298 [emphasis supplied];
 
 see also, Monroe v City of New York,
 
 67 AD2d 89, 103-107).
 

 In
 
 Long v Forest-Fehlhaber,
 
 we similarly contrasted the
 
 nondelegable
 
 nature of the duty of reasonable care imposed on owners and contractors under subdivision (6) with the duty arising under the first five subdivisions of section 241 (55 NY2d, at 159-160,
 
 supra, citing Monroe v City of New York,
 
 67 AD2d, at 103,
 
 supra).
 
 In
 
 Forest-Fehlhaber,
 
 we also reiterated the principle “long and firmly established in New York” (55 NY2d, at 160,
 
 supra)
 
 that, unlike a violation of an explicit and definite statutory provision which demonstrates negligence as a matter of law, a violation of section 241 (6) “is
 
 ‘merely some evidence which the jury may consider
 
 on the question of defendant’s negligence’”
 
 (id.,
 
 quoting
 
 Teller v Prospect Hgts. Hosp.,
 
 280 NY 456, 460 [emphasis supplied];
 
 see also,
 
 Mirabel and Levy, Negligence § 46, at 57-58 [1962]).
 

 Most recently, in
 
 Ross v Curtis-Palmer Hydro-Elec. Co. {supra),
 
 we refined the standard of liability under section 241 (6) by requiring that the rule or regulation alleged to have been breached be a “ ‘specific, positive command’ ” (81 NY2d, at 504,
 
 supra),
 
 rather than a “ ‘reiteration of common-law standards’ ” which would merely incorporate into the State Industrial Code a general duty of care
 
 {id.).
 
 We distinguished between Code provisions “mandating compliance with concrete specifications and those that establish general safety standards”
 
 {id.,
 
 at 505), cautioning that any other rule would permit recovery under section 241 (6) against a nonsupervising owner or general contractor merely by application of broad, nonspecific regulatory language and “would seriously distort the scheme of liability * * * that has been developed in our case law”
 
 {id.,
 
 at 504).
 

 As the foregoing demonstrates, although this Court has consistently rejected the notion that a violation of section 241 (6)
 
 *350
 
 results in absolute liability
 
 irrespective of the absence of some negligent act
 
 which caused the injury, we have repeatedly recognized that section 241 (6) imposes a nondelegable duty upon an owner or general contractor to respond in damages for injuries sustained
 
 due to another party’s negligence
 
 in failing to conduct their construction, demolition or excavation operations so as to provide for the reasonable and adequate protection of the persons employed therein. Thus, once it has been alleged that a concrete specification of the Code has been violated, it is for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiffs injury. If proven, the general contractor (or owner, as the case may be) is vicariously liable without regard to his or her fault
 
 (see, Allen v Cloutier Constr. Corp., supra; see also, Monroe v City of New York,
 
 67 AD2d, at 104,
 
 supra;
 
 PJI 2:216A, at 807-809 [1997]).
 

 An owner or general contractor may, of course, raise any valid defense to the imposition of vicarious liability under section 241 (6), including contributory and comparative negligence
 
 (see, Long v Forest-Fehlhaber, supra,
 
 at 159-161;
 
 Ross v Curtis-Palmer Hydro-Elec. Co., supra,
 
 at 502, n 4;
 
 Zimmer v Chemung County Performing Arts,
 
 65 NY2d 513, 521-522,
 
 rearg denied
 
 65 NY2d 1054).
 

 It follows that the Appellate Division erred in absolving the defendant general contractor from liability under section 241 (6) by reason of its absence of control or lack of personal notice for an opportunity to cure the dangerous condition. By requiring control and/or notice for an opportunity to cure, the Appellate Division reincorporated a common-law standard of due care into section 241 (6), essentially requiring direct negligent acts or omissions
 
 by the general contractor,
 
 thereby eliminating the underlying basis of vicarious liability and replicating much of what Labor Law § 200 has been interpreted to require.
 

 Supreme Court was equally in error here in its conclusion that, as a matter of law, there was no violation of a specific provision of the State Industrial Code sufficient to premise liability under Labor Law § 241 (6). In his verified complaint and supplementary bill of particulars, plaintiff alleged that the diesel fuel, sprayed on the floor of the depot, created a slippery condition in violation of several State Industrial Code provisions, including 12 NYCRR 23-1.7 (d). That regulation, in pertinent part, unequivocally directs employers not to
 
 “suffer or permit any
 
 employee” to use a slippery floor or walkway, and
 
 *351
 
 also imposes an affirmative duty on employers to provide safe footing by requiring that any “foreign substance which may cause slippery footing
 
 shall be removed * * * to provide safe footing”
 
 (12 NYCRR 23-1.7 [d] [emphasis supplied]). As such, 12 NYCRR 23-1.7 (d) mandates a distinct standard of conduct, rather than a general reiteration of common-law principles, and is precisely the type of “concrete specification” that
 
 Ross
 
 requires
 
 *
 
 (see,
 
 Ross v Curtis-Palmer Hydro-Elec. Co., supra,
 
 at 503-505;
 
 see also, Hammond v International Paper Co.,
 
 178 AD2d 798, 799).
 

 A violation of 12 NYCRR 23-1.7 (d), while not conclusive on the question of negligence, would thus constitute
 
 some evidence of negligence
 
 and thereby reserve, for resolution by a jury, the issue of whether the equipment, operation or conduct at the worksite was reasonable and adequate under the particular circumstances. It follows that plaintiff has raised at least a triable issue of fact both as to whether the Transit Authority, an employer and a party to the renovation construction project, violated the Code provision, and thereby was guilty of negligently causing plaintiff’s injuries.
 

 In our view, the jury could, thus, have rationally concluded that someone within the chain of the construction project was negligent in not exercising reasonable care, or acting within a reasonable time, to prevent or remediate the hazard, and that plaintiff’s slipping, falling and subsequent injury proximately resulted from such negligence. Once the negligence of some project party was established at trial, defendant would be vicariously liable,
 
 irrespective of its ability to direct, control or supervise
 
 the construction site or the activity connected therewith to enable it to prevent or remediate any hazardous worksite activity or condition (see,
 
 Ross v Curtis-Palmer Hydro-Elec. Co., supra,
 
 at 502;
 
 Long v Forest-Fehlhaber, supra,
 
 at
 

 
 *352
 
 159-160;
 
 Allen v Cloutier Constr. Corp., supra,
 
 at 300). As stated in
 
 Monroe v City of New York,
 
 the “apparent intent [of the 1969 amendment to section 241 (6)] was to compel owners and general contractors to become more concerned with the safety practices of subcontractors, because
 
 they would be exposed to liability without regard to control over the work”
 
 (67 AD2d, at 105,
 
 supra
 
 [emphasis supplied]). Since an owner or general contractor’s vicarious liability under section 241 (6) is not dependent on its personal capability to prevent or cure a dangerous condition, the absence of actual or constructive notice sufficient to prevent or cure must also be irrelevant to the imposition of Labor Law § 241 (6) liability.
 

 II.
 

 Upon our review of the record, we also conclude that both lower courts erred in summarily dismissing plaintiffs Labor Law § 200 and common-law negligence causes of action. Unlike Labor Law § 241 (6), section 200 is a codification of the common-law duty imposed upon an owner or general contractor to maintain a safe construction site
 
 (see, Ross v Curtis-Palmer Hydro-Elec. Co., supra,
 
 at 505;
 
 see also, Comes v New York State Elec. & Gas Corp.,
 
 82 NY2d 876, 877). It is well settled that an implicit precondition to this duty is that the party to be charged with that obligation “have the
 
 authority to control the activity bringing about the injury to enable it to avoid
 
 or correct an unsafe condition”
 
 (Russin v Picciano & Son,
 
 54 NY2d 311, 317 [emphasis supplied];
 
 see also, Ross v Curtis-Palmer Hydro-Elec. Co., supra,
 
 at 505-506;
 
 Lombardi v Stout,
 
 80 NY2d 290, 295).
 

 Plaintiffs claims rest on portions of testimony taken in the deposition of David Wenger, defendant’s vice-president and secretary. Mr. Wenger testified that he was assigned to assist defendant’s project manager during the rehabilitation, and that his duties involved interaction with the individual subcontractors and scheduling and coordination of the construction with the depot. Mr. Wenger also acknowledged that occasionally, he personally supervised the project, interacting with the foremen of the subcontractors to ensure that the physical work progressed in accordance with the plans, specifications and safety rules.
 

 Critical here, however, is Mr. Wenger’s testimony that, in coordinating the work areas with the depot managers and subcontractors, defendant’s project supervisor was able to condition access to areas under construction to ensure that an
 
 *353
 
 “area is
 
 not going to be utilized in any way
 
 by [the Transit Authority] so we can go into that area and work” (emphasis supplied). Specifically, the project supervisor was “to
 
 make sure that the work area was not going to be used while
 
 * * *
 
 the people under L.A. [Wenger] Contracting
 
 * * *
 
 were working there,
 
 so that the depot knows that we’ll be working in that area and
 
 to keep it clear in case the [Transit Authority] is going to perform work there, so there’s no conflict
 
 with us working there while they’re supposed to be working there” (emphasis supplied). Mr. Wenger also conceded that these coordination efforts fulfilled a “safety factor” for the benefit of both defendant’s employees and Transit Authority employees working at the 126th Street Terminal.
 

 Thus, contrary to the conclusions of the courts below, there exists sufficient record evidence to present a triable issue on whether defendant had control over the methods of the subcontractors and other worksite employees in the sense that defendant had the ability to coordinate the work activity of its subcontractors and the Transit Authority, had the capacity to exclude the Transit Authority from working in the fuel station area of the depot, or had the authority to direct either its subcontractors or the Transit Authority to not engage in an operation while another potentially hazardous activity, i.e., pressure-testing an underground fuel tank, was taking place within the immediate area
 
 (see, Ross v Curtis-Palmer HydroElec. Co., supra,
 
 at 505-506;
 
 Comes v New York State Elec. & Gas Corp.,
 
 82 NY2d, at 877-878,
 
 supra).
 

 Additionally, it is inferable that defendant knew or should have known of the danger to plaintiff from permitting the continuation of his operation simultaneously with and in close proximity to the pressure-testing and its resultant risk of a violent discharge of diesel fuel. The foregoing evidence, if credited, would have permitted the jury to rationally conclude that defendant possessed the requisite supervisory control over that portion of the work activity bringing about the injury to enable it to prevent the creation of the unsafe condition or plaintiff’s exposure to it
 
 (see, Russin v Picciano & Son,
 
 54 NY2d, at 317, supra;
 
 see also, Ross v Curtis-Palmer HydroElec. Co., supra,
 
 at 506).
 

 Consequently, at this stage in the proceedings, plaintiff’s submissions are also sufficient to avoid dismissal of his Labor Law § 200 and common-law negligence causes of action.
 

 
 *354
 
 Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant’s motion for summary judgment denied.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 *
 

 Because we thus conclude that at least one of the regulations cited by plaintiff is both sufficiently specific and applicable in this context, Supreme Court erred in granting summary judgment by ruling that none applied. Therefore, we need not determine, at this juncture, whether any of the remaining regulatory provisions cited by plaintiff below also apply, other than to expressly hold that plaintiff’s attempt here to use Federal OSHA regulations as a predicate for his Labor Law § 241 (6) claim against a nonsupervising owner or general contractor must fail. As the Federal provisions relied upon by plaintiff are not the type which establish a nondelegable duty, the breach of which would constitute some evidence of negligence, any violation of the OSHA regulations by the subcontractor, plaintiff’s employer, would not form the basis for liability under Labor Law § 241 (6) (see
 
 generally, Herman v Lancaster Homes,
 
 145 AD2d 926,
 
 Iv denied
 
 74 NY2d 601;
 
 Pellescki v City of Rochester,
 
 198 AD2d 762, 763).