■ MANUEL GALARRAGA, Also Known as MIGUEL GALARRAGA, Respondent, et al., Plaintiff, v CITY OF NEW YORK, Appellant, et al., Defendants. [863 NYS2d 47]—

In an action to recover damages for personal injuries, the defendant City of New York appeals from (1) a judgment of the Supreme Court, Queens County (Kitzes, J.), entered November 2, 2006, and (2) an amended judgment of the same court entered December 11, 2006, which, upon, inter alia, a jury verdict finding that the defendant City of New York was 55% at fault in the happening of the accident, and the plaintiff was 45% at fault, and upon an order of the same court dated April 24, 2006, which, among other things, denied that branch of the motion of the defendant City of New York pursuant to CPLR 4404 (a) which was to dismiss the plaintiff's Labor Law § 241 (6) cause of action for failure to allege a violation of a specific provision of the Industrial Code, is in favor of the plaintiff Manuel Galarraga, also known as Miguel Galarraga, and against it in the principal sum of $412,500.

Ordered that the appeal from the judgment is dismissed, as the judgment was superseded by the amended judgment; and it is further,

Ordered that the amended judgment is affirmed; and it is further,

Ordered that one bill of costs is awarded to the respondent.

The plaintiff was injured during the course of his employment removing asbestos from a New York City school when he struck his head on an overhanging pipe as he was attempting to leave his basement work area after the lighting and ventilation failed. He commenced this action against, among others, the City of New York, which owned the building in which he was working, to recover damages, inter alia, in effect, for violation of Labor Law § 241 (6). At trial, the plaintiff asserted that the City violated 12 NYCRR 23-1.8 (c) (1), which provides that every person required to work or pass within any area "where the hazard of head bumping exists shall be provided with and shall be required to wear an approved safety hat." Here, the plaintiff argued, although the overhanging pipes in his basement work area constituted such a hazard, he was not provided with a safety hat. The jury found, among other things, that the City had violated Labor Law § 241 (6) and was 55% at fault in the happening of the accident, and awarded the plaintiff damages. The damages were subsequently reduced by stipulation of the plaintiff. On appeal, the City argues, inter alia, that the Supreme Court erred by, in effect, permitting the plaintiff to amplify his pleadings at trial concerning his Labor Law § 241 (6) cause of action to identify the specific provision of the Industrial Code (hereinafter the Code) allegedly violated, and that the damages awarded, even as reduced by the stipulation of the plaintiff, are excessive. We disagree.

Labor Law § 241 (6) imposes a nondelegable duty on owners and contractors to provide reasonable and adequate protection and safety for workers, and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor as set forth in the Code (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 502 [1993]; Norton v Park Plaza Owners Corp., 263 AD2d 531 [1999]). To establish a cause of action for a violation of Labor Law § 241 (6), a plaintiff must plead and prove a violation of a specific provision of the Code (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 505 [1993]). Here, during the pretrial proceedings, the plaintiff did not identify the specific Code provision allegedly violated. However, concomitantly, the City never made a demand for the same. Indeed, although such a demand was made by a former party, there is no evidence that the City joined in that demand. Further, although the plaintiff deferred a response to the demand until after the completion of disclosure, no response was provided. No further mention was made of the demand. Consequently, it was not until trial that the plaintiff identified 12 NYCRR 23-1.8 (c) (1) as the relevant Code provision. The City argues that this delay was fatal. However, on the facts and circumstances presented, we disagree.

In general, leave to amend a pleading may be granted at any time, including during trial, absent prejudice or surprise to the opposing party, unless the proposed amendment is palpably insufficient or patently devoid of merit (*see McCaskey, Davies & Assoc. v New York City Health & Hosps. Corp.,* 59 NY2d 755 [1983]; *Morris v Queens Long Is. Med. Group, P.C.,* 49 AD3d 827 [2008]; *Lanpont v Savvas Cab Corp.,* 244 AD2d 208 [1997]). However, where the application for leave to amend is made long after the action has been certified for trial, judicial discretion in allowing such amendments should be discrete, circumspect, prudent, and cautious, and, where leave is sought on the eve of trial, judicial discretion should be exercised sparingly (*see Morris v Queens Long Is. Med. Group, P.C.,* 49 AD3d 827 [2008]). Relevant to the case at bar, this Court has held that the failure to identify the specific Code provision allegedly violated in support of a Labor Law § 241 (6) cause of action either in the complaint or in the bill or supplemental bills of particulars is not necessarily fatal. Rather, leave to amend the pleadings to so identify the relevant Code provision may properly be granted, even after the note of issue has been filed, where the plaintiff makes a showing of merit, and the amendment involves no new factual allegations, raises no new theories of liability, and causes no prejudice to the defendant (*see Dowd v City of New York,* 40 AD3d 908 [2007]; *Latino v Nolan & Taylor-Howe Funeral Home,* 300 AD2d 631 [2002]; *Kelleir v Supreme Indus. Park,* 293 AD2d 513 [2002]). Here, applying these standards, the Supreme Court did not err by, in effect, permitting the amendment of the plaintiff's pleadings to identify 12 NYCRR 23-1.8 (c) (1) as the relevant provision.

On appeal, as before the Supreme Court, the City's arguments suggest that the plaintiff's initial pleading failure in and of itself was fatal, or that, at a minimum, the amendment should have been denied due to laches. However, as discussed, supra, the initial pleading failure was not in and of itself fatal. Further, although a long period of time elapsed between the accident and the trial, the cause of the delay is not explained on the record. In any event, laches is not mere delay, but considerable delay resulting in a change of position, intervention of equities, loss of evidence, or other disadvantages (*see O'Dette v Guzzardi,* 204 AD2d 291 [1994]). Here, this was not demonstrated.

Similarly, on appeal, as before the Supreme Court, the City does not particularize its argument that it was prejudiced by the plaintiff's belated amplification of his pleadings. Rather, the City's arguments merely suggest that it was misled into believ-

ing that the plaintiff's factual allegations focused upon who was responsible for the loss of lighting in the work area, not whether the work area posed a hazard of head bumping. However, a conclusion that the City was prejudiced or surprised by the belated identification of 12 NYCRR 23-1.8 (c) (1), or that the Code provision raised new factual allegations or new theories of liability, is not supported by the record.

The City, as the appellant, is responsible for assembling a proper record on appeal (see *Garnerville Holding Co. v IMC Mgt.*, 299 AD2d 450 [2002]). However, the City did not include in the record on appeal any of the plaintiff's pretrial testimony. Consequently, it cannot be determined upon the record presented that the plaintiff's testimony at trial, which focused solely on the lack of a safety hat, surprised or prejudiced the City, or raised new factual allegations or new theories of liability. Indeed, although the sole focus of the plaintiff's opening statement and testimony at trial was the lack of a safety hat, with the loss of lighting in the basement addressed merely as furnishing the occasion for the happening of the accident, the City did not object to the plaintiff's opening statement or his testimony at trial on the ground that it raised new factual allegations or theories of liability. Rather, during cross-examination, the City challenged the plaintiff's testimony on the merits, questioning him concerning whether the overhanging pipes in his basement work area in fact presented a hazard of head bumping and, therefore, whether a safety hat was needed. Similarly, the City did not raise any relevant objection when the plaintiff announced his intention to call an expert witness to provide testimony concerning, inter alia, the alleged violation of "23.18 [*sic*] of the Industrial Code." Rather, it was only after both sides had rested that the City first raised the issue of the plaintiff's belated identification of the relevant Code provision. Further, as noted, supra, the City's argument at that time was, in effect, that the initial pleading defect was in and of itself fatal. Otherwise, as also noted, supra, the City made only a nonparticularized claim of prejudice. It did not, for example, argue that it had been misled in preparing its defense. Nor did it request an adjournment or any other similar relief to address the belatedly-identified Code provision. Indeed, it is clear from the City's opening statement and its evidence at trial that its defense was not directed at the factual predicate for the plaintiff's Labor Law § 241 (6) cause of action. In fact, the City called no witnesses at trial. Rather, the focus of the City's defense was that it could not and should not be held liable for the plaintiff's injuries because it did not supervise or control his work or equipment, or his work area. The City noted that the

plaintiff was an employee of a specialized company that had its own workers, equipment, and methods, and that, due to the nature of the work, wholly controlled the work area to the exclusion of others. However, that defense was without merit and is not pressed on appeal. An owner's liability under Labor Law § 241 (6) is not predicated upon supervision or control (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343 [1998]; *Gordon v Eastern Ry. Supply*, 82 NY2d 555 [1993]). On the merits, the City argued that the basement work area did not present a hazard of head bumping because all of the overhead pipes were at least six feet off of the ground and, therefore, the plaintiff need not have been provided with a safety hat. However, this argument was rebutted by the happening of the accident and by the plaintiff's testimony that he was provided with a hard hat the day before his accident, and that he would have been provided with one on the day in question but for the fact that the key to unlock the storage area for the same was not on-site at the time he commenced work. In sum, the plaintiff's proposed amendment had merit and, on the record presented, was not shown to have involved new factual allegations, raised new theories of liability, or caused prejudice to the City. Thus, the Supreme Court did not err by, in effect, permitting the amendment.

As reduced by the plaintiff's stipulation, the damages awarded do not deviate materially from what would be reasonable compensation (*see e.g. Sozzi v Gramercy Realty Co. No. 2*, 304 AD2d 555 [2003]).

The City's remaining contentions are without merit or need not be reached in light of our determination. Lifson, J.P., Ritter, Florio and Carni, JJ., concur.