FITZROY BURNETT et al., Respondents, v CITY OF NEW YORK, Appellant. [961 NYS2d 81]—

Order, Supreme Court, New York County (Geoffrey D. Wright, J.), entered December 7, 2011, which, to the extent appealed from, upon the parties' motions for clarification of an order, same court and Justice, entered June 29, 2011, clarified that the increased award of $500,000 (post allocation of fault) included all damages awarded by the jury, unanimously affirmed, without costs. Appeal from so much of the December 7, 2011 order as denied reargument of the issue of liability, unanimously dismissed, without costs, as taken from a nonappealable paper. Order, same court and Justice (Geoffrey D. Wright, J.), entered June 29, 2011, which denied defendant's motion to set aside the verdict as to liability, and granted plaintiff's cross motion to set aside the verdict to the extent of ordering a new trial on damages unless defendant stipulated to

an increased total from $250,000 to $500,000 (post-allocation of fault for past and future pain and suffering and lost earnings), and adding $91,000 to that award to offset potential medical liens, unanimously modified, on the law and the facts, to vacate the additur of $91,000 for medical expenses, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered June 28, 2011, unanimously dismissed, without costs, as taken from a duplicate of the aforesaid June 29, 2011 order.

The trial evidence establishes that plaintiff Fitzroy Burnett (plaintiff), then a track worker employed by defendant, was injured while removing temporary wood shoring from beneath newly laid subway track. To reach the location of the temporary shoring, he had to walk through the troughs between the rails, which contained water, and to perform the task, he had to stand in a trough containing water. When he placed his right foot against a track tie for leverage, it slipped off the tie, and then his left foot, in the wet trough, slipped, and plaintiff fell backward and landed on a rail.

The trial court correctly concluded that the rail bed constituted a floor, passageway, or walkway within the meaning of Industrial Code (12 NYCRR) § 23-1.7 (d), that a watery slipping hazard was permitted to exist there, making footing unsafe, and that this unsafe condition caused plaintiff to slip and fall (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 350-351 [1998]). The evidence demonstrates that the water was not an integral part of plaintiff's work; indeed, measures were taken by defendant to eliminate the water from the work space using pumps and an absorbing compound (compare Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 147 [1st Dept 2012]; Gaisor v Gregory Madison Ave., LLC, 13 AD3d 58 [1st Dept 2004]). Since an owner's liability under Labor Law § 241 (6) is vicarious, it is irrelevant that defendant, as it contends, had no notice of the hazardous condition (see Rizzuto, 91 NY2d at 352).

After the accident, plaintiff was taken to an emergency room where a soft cast was placed on his right foot, and he was discharged. Later that day, his right shoulder began to hurt, and on the third day after the accident, plaintiff suffered seizures, and was taken to the hospital. Although a CT scan and an MRI showed normal results, an EEG indicated marginal slowing of brain-wave activity. Plaintiff was placed on anti-seizure medications and treated by a neurologist. An orthopedic specialist, Dr. John Sharkey, determined that he had suffered a severe, comminuted, four-part proximal humerus fracture and dislocation of his right shoulder. Sharkey surgically repaired

plaintiff's shoulder, using a prosthetic device to replace the head of the humerus, and suturing a posterior labral tear and a split tear in the rotator cuff. Testifying at trial as an expert, Sharkey opined, based on plaintiff's shoulder complaints soon after leaving the emergency room on the date of his accident, that plaintiff likely had incurred a non-displaced shoulder fracture and that convulsive movements during his seizures had seriously exacerbated the injury.

Sharkey also performed open reduction surgery on plaintiff's right ankle, using plates and screws to stabilize a lateral malleolous fracture. Plaintiff then underwent two years of extensive physical therapy. He was able to return to employment with defendant in a sedentary time-keeping position. Sharkey's range-of-motion tests on plaintiff's right shoulder showed appreciable permanent restrictions and a 50% overall loss of shoulder function. Sharkey opined that plaintiff's right shoulder would likely become arthritic, weaker and more painful over time, and that his right ankle, which had fractured, would remain stiff and that he would occasionally experience difficulty in walking.

Plaintiff's treating neurologist, who also testified as an expert, opined, based on plaintiff's unremarkable medical history and the proximity of his seizure occurrence to the subway track accident, that plaintiff had suffered a post-traumatic seizure disorder as a result of hitting his head in the fall on the track. The neurologist testified that when plaintiff discontinued his seizure medications in August 2010, he experienced another seizure and was hospitalized.

Plaintiff testified that he was no longer able to play cricket with his friends or football with his son, among other things, and that he could not perform his regular handyman chores around the house.

The jury's award of $175,000 and $75,000 for past and future pain and suffering, respectively, did not take into account the allocation of liability 50% to plaintiff. The award deviates materially from what would be reasonable compensation (*see* CPLR 5501 [c]), and the trial court correctly raised plaintiff's award.

Defendant is not entitled to the $91,000 by which the court increased the total award to plaintiff to offset potential medical liens. By letter to plaintiff's counsel dated April 6, 2011, defendant asserted its claim to a lien on medical payments it had made on plaintiff's behalf. However, in its motion papers to the court, it appeared to state openly that it would not seek to enforce any such liens, thus effectively waiving its right to do so (*see Matter of Hilton v Truss Sys.*, 82 AD2d 711, 712 [3d Dept 1981], *affd*

56 NY2d 877 [1982] ["if a carrier or employer desires to preserve its offset rights, it is obliged to plainly and unambiguously so state"]). Concur—Andrias, J.P., Friedman, Acosta, Freedman and Clark, JJ.