■ In the Matter of NEW YORK ASBESTOS LITIGATION. PHYLLIS BROWN, as Administratrix of the Estate of HARRY E. BROWN, Deceased, Appellant, v BELL & GOSSETT COMPANY, Defendant, and CONSOLIDATED EDISON OF NEW YORK, INC., Respondent. [49 NYS3d 1]—

Order, Supreme Court, New York County (Barbara Jaffe, J.), entered August 29, 2014, which granted defendant Consolidated Edison's (Con Edison) posttrial motion to set aside the verdict against it and direct that judgment be entered in its favor dismissing the complaint against it, and order, same court and Justice, entered March 13, 2015, which, to the extent appealed from as limited by the briefs, upon renewal and reargument of Con Edison's motion, adhered to the original determination, reversed on the law and facts, without costs, the posttrial motion denied, the verdict as against Con Edison reinstated, and a new trial on damages for loss of consortium ordered unless plaintiff stipulates, within 30 days after service of a copy of this order with notice of entry, to reduce the loss of consortium verdict to $360,000, and to entry of a judgment in accordance therewith.

The trial court improperly set aside the verdict in plaintiff's favor on the Labor Law § 200 claim against Con Edison. The evidence at trial demonstrated that Con Edison had the "authority to control the activity bringing about the injury" (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993] [internal quotation marks omitted]). "[A]n implicit precondition to this duty is that the party to be charged with that obligation have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998] [internal quotation marks and emphasis omitted]).

In the recently decided case of *Matter of New York City Asbestos Litig.* (142 AD3d 408, 409 [1st Dept 2016] [*North*]), we upheld a jury verdict in the plaintiff's favor on a section 200 claim in an asbestos case where a predecessor of one of the defendants had issued detailed specifications directing contractors in the means and methods of mixing and applying asbestos-containing concrete and insulation at a power plant. In so holding, we reasoned that it was of no consequence that

the defendant had supervised the superintendents, rather than directly supervising the workers (*id.*).

Similarly, in *Rizzuto*, the Court of Appeals reversed an order granting the defendant general contractor's motion for summary judgment dismissing, inter alia, section 200 and common-law negligence claims where an employee of a plumbing subcontractor was injured by diesel fuel that sprayed on him while he was in the process of removing and replacing a submersible pump in the fuel station area of a Transit Authority bus terminal (91 NY2d at 347-348). Although the general contractor did not have control over the subcontractor's plumbing methods per se, the general contractor had control over the methods of the subcontractors and other site workers "in the sense that [it] had the ability to coordinate the work activity of its subcontractors and the Transit Authority, had the capacity to exclude the Transit Authority from working in the fuel station area of the depot, or had the authority to direct either its subcontractors or the Transit Authority to not engage in an operation while another potentially hazardous activity, i.e., pressure-testing an underground fuel tank, was taking place within the immediate area" (*id.* at 353; *see also Bush v Gregory/ Madison Ave.*, 308 AD2d 360, 361 [1st Dept 2003] [presence of safety coordinator with authority to stop work if a dangerous condition arose raised triable issue of fact]).

Con Edison had the ability to prevent the hazard ultimately causing the plaintiff's injury, namely, the application of asbestos-containing materials. Indeed, Con Edison's specifications *affirmatively required* the use of hazardous asbestos-containing insulation materials, and Con Edison monitored work for compliance with those specifications. This is a far different situation from one in which a defendant has general workplace oversight, but there is no claim that the specifications themselves mandated that the contractor engage in the injury-producing activity.

This case is dissimilar to previous ones we have encountered involving injuries arising from the installation or removal of asbestos materials. *Matter of New York City Asbestos Litig.* (25 AD3d 375 [1st Dept 2006] [*Tortorella*]), *Matter of New York City Asbestos Litig.* (25 AD3d 374 [1st Dept 2006] [*Philbin*]), and *Matter of New York City Asbestos Litig.* (41 AD3d 177 [1st Dept 2007] [*Held*]), relied on by the trial court in overturning the jury's verdict, are inapposite.

The order should be reversed to direct a new trial on damages unless plaintiff stipulates to reduce the loss of consortium verdict to $360,000, the amount suggested by the trial court

(*see Penn v Amchem Prods.*, 85 AD3d 475, 476 [1st Dept 2011] [loss of consortium award over 13 months reduced from $1,670,000 to $260,000 or $20,000 per month]). Concur— Renwick, Manzanet-Daniels and Kapnick, JJ.

Sweeny, J., dissents in a memorandum as follows: I dissent.

The decedent Harry E. Brown worked with asbestos-containing insulation from 1959 to 1974. From the winter of 1964 to the spring of 1965, he was employed by Robert A. Keasbey, Inc. (Keasbey) as an asbestos insulation installer. Keasbey was a subcontractor at defendant Con Edison's Ravenswood power plant, where it held the subcontracts for asbestos insulation from the three major contractors at the site: Combustion Engineering (boiler), General Electric (turbine) and either Couter or Wolf & Manier (pipes). The contracts between Con Edison or its general contractor with these three contractors required that each would provide a foreman in charge of its specific work and that Con Ed would inspect all contractors' work periodically to ensure compliance with contract specifications as well as to enforce general safety at the site. The contracts further provided that whenever work generated harmful dust, the contractor was obligated to install and maintain equipment that protected the plant and workers against such dust.

Decedent testified at his deposition that he was exposed to asbestos-containing dust while working at the Ravenswood site, where ventilation was inadequate and the workers did not wear masks. He stated that he took his work instructions from Keasbey's foreman. Although he considered every property owner to be "in charge" of any construction work at any project he worked at, he testified that he never spoke with or received any direction from anyone from Con Ed while working at Ravenswood. Keasby's foreman at the Ravenswood job testified that the general contractor would coordinate the various activities of the trades through a schedule. The job specifications would have been approved by Con Ed.

Con Ed's engineers and construction managers testified that they monitored the work to ensure that the contractors performed their work productively, safely and according to a preset schedule. If a problem arose, it was taken to their supervisors at Con Ed, as they did not have the authority to direct the contractors' work.

The jury returned a verdict, finding that decedent was exposed to asbestos at Ravenswood, that Con Ed exercised supervision and control over the workers at Ravenswood in a negligent manner and that such negligence was a substantial

cause of plaintiff's injuries. It further found that Con Ed was 30% liable and awarded plaintiff $2.5 million. The jury also awarded plaintiff $1 million for the loss of consortium of her husband.

Con Ed moved pursuant to CPLR 4404 (a) to set aside the verdict, arguing that, as a matter of law, plaintiff had failed to adduce sufficient evidence from which the jury could reasonably infer that Con Ed exercised supervisory control over Brown's work. The court agreed, set aside the jury verdict and dismissed plaintiff's complaint as against Con Edison. The court also found that the loss of consortium award was excessive and reduced it to $360,000.

Plaintiff thereafter moved to renew and reargue, arguing that the court's reliance on several recent asbestos cases (*Matter of New York City Asbestos Litig.* (25 AD3d 375 [1st Dept 2006] [*Tortorella*]), *Matter of New York City Asbestos Litig.* (25 AD3d 374 [1st Dept 2006] [*Philbin*]) and *Matter of New York City Asbestos Litig.* (41 AD3d 177 [1st Dept 2007] [*Held*]) was misplaced. She also argued that the remittitur on the loss of consortium was improper, since the issue was rendered moot by the dismissal of the complaint. Both motions were denied.

It is well settled that liability under Labor Law § 200 falls into two broad categories, depending on whether the injury arose from allegedly defective or dangerous premises conditions or from the means and methods of the work (*see Purcell v Metlife Inc.*, 108 AD3d 431, 432 [1st Dept 2013]). The parties here agree that this case falls within the latter "means and methods" category. As a result, "the owner or general contractor may be liable only if it exercised supervision or control of the work that led to the injury" (1B NY PJI3d 2:216 at 339 [2016]; *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]).

As an initial matter, I agree with the majority that the trial court erred in holding that *Philbin*, *Tortorella* and *Held* are squarely on point with the instant case. Simply because the complaints in those cases were dismissed on the basis of insufficient evidence of Con Ed's supervision or control over the activity that led to injury-producing asbestos exposure, they are not dispositive of the issues in this case. The facts of those cases differ from the instant case in important respects, such as contract specifications, the type of work in question, or the issues raised and argued on appeal.

Nevertheless, in my view, the court correctly dismissed the Labor Law § 200 and common-law negligence claims against Con Ed. There is no evidence on this record that Con Ed

exercised the necessary degree of supervision or control over the decedent's work as an insulation installer to subject it to liability under the statute (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]). The presence of Con Ed personnel at the work site to monitor the progress of the work under a preset schedule, and to inspect the project to confirm that the work was performed in accordance with the contract specifications, as well as Con Ed's authority to enforce general safety standards is indicative of a general right of inspection, and not of supervisory control (*see Comes*, 82 NY2d at 877). Indeed, as noted, decedent specifically testified that he took his instructions from Keasbey's foreman and did not speak to Con Ed personnel. Con Ed's general supervisory control is thus insufficient to impose liability under Labor Law § 200 or the common law (*see Bisram v Long Is. Jewish Hosp.*, 116 AD3d 475, 476 [1st Dept 2014]; *Reilly v Newireen Assoc.*, 303 AD2d 214, 221 [1st Dept 2003], *lv denied* 100 NY2d 508 [2003]; *Singleton v Citnalta Constr. Corp.*, 291 AD2d 393, 394 [2d Dept 2002]).

The majority's reliance on our recent decision in *Matter of New York City Asbestos Litig.* (142 AD3d 408 [1st Dept 2016] [*North*]) is misplaced. In *North*, we upheld the verdict against the defendant National Grid on the plaintiff's Labor Law § 200 cause of action because LILCO, defendant's predecessor in interest, "issued detailed specifications directing contractors in the means and methods of mixing and applying asbestos-containing concrete and insulation at the power plant" (*id.* at 409). Additionally, LILCO retained the authority to direct the various trades "as to where and when to do their work, which resulted in plaintiff's working in close contact with the asbestos-dust- producing insulators" that caused the plaintiff's injuries and ultimately his death (*id.*). This type of control over the means and methods of the injury-causing work falls squarely within the precedents set out in *Comes, Ross* and *Bisram* and is notably absent in this case. While it is true that Con Ed required the use of asbestos-containing insulation, it played no role in controlling how that installation was installed. That function was left to plaintiff's employer. Indeed, the record is clear that, while Con Ed had inspectors on site monitoring the work, the inspectors did not have the authority to direct the work performed by Keasbey's employees.

Nor does *Rizzuto v L.A. Wenger Contr. Co.* (91 NY2d 343 [1998]), also relied upon by the majority, compel a different result. There the Court found that there was a triable issue of fact as to whether the defendant general contractor had control over the methods of the subcontractors and other work site

employees (*id.* at 353). However, unlike here, there was testimony from the defendant's supervisor that it was his responsibility to coordinate activities between the defendant's employees and the owner Transit Authority's personnel performing duties unrelated to the ongoing repair work (*id.* at 352-353). The defendant's project supervisor had the authority to control access to areas under construction and to exclude any other persons not employed by the defendant (*id.*). He also knew that there were ongoing Transit Authority operations at the site, unrelated to the repair work undertaken by the defendant (*id.*). The project supervisor testified it was his responsibility to ensure that no Transit Authority activities took place in areas where defendant's employees were working (*id.* at 353). He thus knew, or should have known, that Transit Authority employees had begun pressure testing a fuel tank near where the plaintiff, an employee of a subcontractor was working (*id.*). Diesel fuel erupted during the test, spraying the plaintiff, causing him to fall and sustain injuries (*id.* at 347). This was the result of a failure of coordination of the trades, the very task the defendant general contractor had been performing. That type of control is notably absent here.

Significantly, the injury in the instant case arose from the manner in which plaintiff installed the insulation. Con Ed was not involved in that activity, the means and methods of that work being left to Keasbey.