**Digangi v NYU Langone Hosps.**

2024 NY Slip Op 33783(U)

October 22, 2024

Supreme Court, Kings County

Docket Number: Index No. 521751/2018

Judge: Wayne Saitta

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 29 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 22nd day of October 2024.

P R E S E N T:

HON.   WAYNE SAITTA, Justice.

----------------------------------------------------------------X

JAMES P. DIGANGI,

                                Plaintiff          Index No. 521751/2018
          -against-                                MS 7, 8, & 9

NYU LANGONE HOSPITALS f/k/a NYU HOPITALS
CENTER, NYULMC REAL EASTATE DEVELOPMENT,
NEW YORK UNIVERSITY, TISHMAN
CONSTRUCTION CORPORATION, TURNER
CONSTRUCTION COMPANY, VITATECH
ELECTROMAGNETICS LLC,

                                Defendants.
----------------------------------------------------------------X

NYU LANGONE HOSPITALS f/k/a NYU HOPITALS
CENTER, NEW YORK UNIVERSITY and
TISHMAN CONSTRUCTION CORPORATION,

                          Third-Party Plaintiff
               -against-

GILSTON ELECTRICAL CONTRACTING LLC,

                          Third-Party Defendants.
----------------------------------------------------------------X

GILSTON ELECTRICAL CONTRACTING LLC,

                          Second Third-Party Plaintiff,

               -against-

VITATECH ELECTROMAGNETICS, LLC,

                          Second Third-Party Defendant.
--------------------------------------------------------------------X

[* 1]

The following papers read on this motion:

NYSCEF Doc Nos

Notice of Motion/Order to Show Cause/
Petition/Affidavits (Affirmations) and
Exhibits                                                                158-174, 204-233
Cross-motions Affidavits (Affirmations)
and Exhibits                                                           175-203
Answering Affidavit (Affirmation)                       234-262, , 263-266, 267-269
Reply Affidavit (Affirmation)                               273, 274, 275
Supplemental Affidavit (Affirmation)

In this action, Plaintiff, an electrician, alleges that he was injured when he was exposed to toxic fumes from a welding operation while he was working on a construction job at NYU Hospital. Plaintiff commenced this action which asserts claims pursuant to Labor Law §§ 240(1), 241(6) and 200.

Defendant NYU LANGONE HOSPITALS f/k/a NYU HOPITALS CENTER, NEW YORK UNIVERSITY (NYU) is the owner of the premises and Defendant TISHMAN CONSTRUCTION CORPORATION (TISHMAN) was the general contractor.

Defendant VITATECH ELECTROMAGNETICS, LLC (VIATECH) was a subcontractor whose workers performed welding at the site.

Third-Party Defendant/Second Third-Party Plaintiff GILSTON ELECTRICAL CONTRACTING LLC (GILSTON) was a subcontractor and Plaintiff's employer.

Plaintiff moves for summary judgment on his § 241(6) and § 200 claims.

Defendants NYU and TISHMAN move to dismiss Plaintiff's complaint and for summary judgement on its third-party complaint against Third-Party Defendant GILSTON for contractual indemnification and failure to procure insurance.

Defendant VIATECH moves for summary judgment dismissing Plaintiff's complaint.

2

[* 2]

**Plaintiff's motion**

Plaintiff alleges that on September 8, 2017 at approximately 2:30 pm while he was working as an electrician next to a suite in which Defendant VIATECH employees were welding, toxic fumes from the welding escaped from the suite and entered the corridor where he was working. He alleges that he was exposed to the fumes for five to ten minutes and then entered the suite to tell the VIATECH employees to stop welding.

Defendants submitted the affidavit of Norman Horn, a welder employed by VIATECH who stated that he and the other welders stopped welding at 11:45 am on September 8, 2017, the date Plaintiff claims to have been injured. Plaintiff claims that he was injured at 2:30 pm that day.

Horn also stated that they were using smoke-eaters, local exhaust systems designed to capture fumes, smoke, and other airborne contaminants. He further stated that smoke-eaters were operable on September 8, 2017.

Horn stated that the smoke-eaters malfunctioned on September 7, 2017 causing the welders to cease work on that date,

The incident report filled out by Plaintiff states that his injury occurred on Friday, September 8, 2017.

Horn's affidavit contradicts Plaintiff's testimony that they were welding on September 8, 2017 at 2:30 pm in the afternoon and that fumes from the welding had escaped from the area where they were welding because the smoke-eater was not operating.

These conflicting versions of events raise a question of fact that will have to be determined by a jury and preclude granting Plaintiff summary judgment.

3

[* 3]

**NYU's and TISHMAN's motion**

As a preliminary matter, Plaintiff did not oppose that part of Defendant NYU's motion to dismiss his claims pursuant to § 240(1) and it is undisputed that the alleged incident is not gravity related.

Additionally, as discussed above, there remains a question of fact whether welding was occurring at the time Plaintiff alleges he was injured.

Defendants argue that even if there was welding occurring when Plaintiff claims it was, Plaintiff was the sole proximate cause of his injuries because he improperly entered the suite where he alleges that the welding was occurring despite the fact that entry to that suite was not allowed.

However, Plaintiff alleges that the fumes from the welding in the suite entered the corridor where he was working for 5 to 10 minutes before he entered the suite. He also alleges that the welders stopped welding as soon as he told them to stop. He alleges that he was injured by the fumes that had escaped from the suite into the corridor for five to ten minutes before he entered the suite.

Thus, even if Plaintiff bears some comparative negligence for entering the suite, his entry into the suite was not the sole cause of his injuries.

**Labor Law § 241(6)**

Plaintiff assert three Industrial Code Sections in support of his claims pursuant to § 241(6): 23-1.21(d), 23-1.7(g), and 1.25(e)(2).

Industrial Code § 23-1.7(g) provides:

Air-contaminated or oxygen deficient work areas. The atmosphere of any unventilated confined area including but not limited to a sewer, pit, tank or chimney where dangerous air contaminants may be present or where there may not be sufficient oxygen to support life shall be tested by the employer,

4

[* 4]

his authorized agent or by a designated person before any person is suffered or permitted to work in such area.

This section is inapplicable because, Plaintiff's testified that he was working outside of the suite which he alleges was a confined area. He testified that while he was working in the corridor, he saw smoke leaving the suite and entering the corridor. He testified he entered the suite told the welders to stop welding and they did stop. Plaintiff claims that he was injured from inhaling the fumes that escaped the suite for five to ten minutes before he told the welders to stop.

As he was not working in the suite and alleges that he inhaled fumes that had escaped the suite, § 23-1.7(g) is not applicable.

### § 1.25(e)(2)

Industrial Code § 1.25(e)(2) provides:

Where there is a hazard to other persons from flying particles of metal there shall be provided suitable incombustible screening installed between the welding or flame-cutting operations and such other persons.

This section is inapplicable as there is no evidence that Plaintiff was injured by flying particles of metal.

### § 1.26

Industrial Code **§** 23-1.26 provides:

(a)  General. All hot riveting, welding, flame cleaning and flame cutting of structural steel or other metal which has been coated with any compound containing lead or with any other substance which may create toxic fumes when heated shall be performed in the following manner.

(d) Unless suitable local exhaust ventilation is provided, all persons performing flame cleaning or flame-cutting operations on metals that have been coated with any compound containing lead or any other substance which may create toxic fumes when heated, and all persons located within a radius of 15 feet of such operations, shall be provided with approved respirators.

5

[* 5]

Defendants contend that § 1.26(d) was not violated because Plaintiff was more than 15 feet from where the welding was occurring, and he was provided with an N-95 mask which he chose not to wear.

Defendants argue that Plaintiff's testimony that he was working within 5 to 10 feet of the welding is false and should be disregarded by the Court. Defendants cite the deposition testimony of Norman Horn that the welding was occurring in one of the imaging rooms and that the diagram of the area indicates that the imagining room is more than 15 feet from where Plaintiff was working.

These rooms were marked on the diagram with six X's and two X's respectively. Defendants submitted an affirmation by Debra Vitale of Defendant VIATECH, in which she stated that she used a software program to calculate the distance between the area where Plaintiff marked that he was working, to the imaging room marked by six X's. She stated that the software program calculated the distance as 75 feet.

However, Plaintiff testified that upon entering the suite, he took three steps forward and six steps to the right and that the welders were in the area on the diagram marked by seven X's.

Accepting Plaintiff's deposition testimony, together with the diagram, Plaintiff could have been within 15 feet of the welders.

These two differing versions of where the welding was taking place without a functioning smoke-eater raise material questions of fact that must be resolved at trial.

Further, while Plaintiff admits that he was provided with an N-95 mask, which he chose not to use, there is nothing in the record to indicate whether an N-95 mask is an approved respirator within the meaning of § 1.26(d).

As there remain questions as to whether Plaintiff was working within 15 feet of the welding and whether he was provided with an approved respirator, Defendants have not

6

met the burden of demonstrating that Industrial Code § 23-1.26(d) was not violated, thus dismissal of Plaintiff's claims pursuant to Labor Law § 241(6) is not warranted.

**Labor Law §200**

In this case, Plaintiff alleges he was injured due to the means and methods employed by Defendant VIATECH's workers, specifically welding without a functional smoke-eater and without adequately sealing the suite where the welding was occurring.

Defendants move to dismiss Plaintiff's claims pursuant to Labor Law § 200 on the grounds that they did not supervise or control the work that caused Plaintiff's injury.

Plaintiff argues that both Defendants NYU and TISHMAN were involved in supervising the welding and ensuring that safety protocols were adhered to.

As it was the means and methods employed by Defendant VIATECH's employees that Plaintiff alleges caused his injury, the question is whether Defendants NYU or TISHMAN supervised or controlled the manner in which VIATECH performed the welding, rather than whether they supervised Plaintiff's work.

The party against whom liability is sought must "have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition" (*Rizzuto v. L.A. Wenger Contr. Co.,* 91 NY2d 343, 352 [1998]).

"The retention of the right to generally supervise the work, to stop the contractor's work if a safety violation is noted, or to ensure compliance with safety regulations, does not amount to the supervision and control of the work site necessary to impose liability on an owner or general contractor pursuant to Labor Law § 200" (*Dennis v. City of New York,* 304 AD2d 611, 612 [2d Dept 2003]).

Plaintiff points to the deposition of Stephen Haney, manager of the construction safety program for NYU, who developed the construction safety policy manual that

7

[* 7]

covered the project and who testified that it was his responsibility to oversee and monitor contractors working on the project to ensure that the safety policy was complied with.

Haney also testified that the safety policy provided for protection for people, including laborers, from environmental hazards, including toxic gas released as a byproduct of welding, and that welding was to be done only with an operable smoke-eater at the point of the work.

Haney further testified that Defendant NYU would issue the hot work permit required for the welding. He testified that Trevor Meistrell, the site superintendent on the project for Defendant TISHMAN was required to see that the work was done in accordance with the safety rules set down by NYU for the project and that it was TISHMAN's responsibility as general contractor to make sure that smoke-eater or other ventilation apparatus was used when workers were welding.

Meistrell testified at his deposition that it was his responsibility to ensure that precautions were taken to prevent the seepage of toxic materials and gases. He also testified that his responsibilities including walking the site daily to make sure that the safety protocols were being followed, including concerns regarding smoke from welding.

The deposition testimony of Haney and Meistrell are sufficient to raise a question of fact as to whether Defendants NYU and/or TISHMAN exercised control and supervision over Defendant VIATECH's welding.

**NYU and TISHMAN's contractual indemnification claim**

Defendants NYU and TISHMAN seek summary judgment on their third-party claim for contractual indemnification against Third-Party Defendant GILSTON, Plaintiff's employer.

[* 8]

Defendant TISHMAN and Third-Party Defendant GILSTON entered into a contract for GILSTON to perform electrical work on the project.

Section 7 of the contract requires GILSTON to indemnify TISHMAN and NYU, as the owner of the premises, for any claims, including attorneys' fees, arising from its acts or omissions.

This indemnification section provides that "[a]s used in this paragraph, "Contractor" shall mean Contractor and its representatives, employees, servants, agents, subcontractors, delegates, or suppliers". GILSTON is identified in the contract as "the Contractor".

Defendant VIATECH was a subcontractor of Third-Party Defendant GILSTON and thus GILSTON must indemnify Defendants NYU and TISHMAN for claims arising from the acts of VIATECH. This obligation arises from the contract and is not dependent on GILSTON supervising VIATECH's work.

Further, the indemnification provision of the contract between Defendant TISHMAN and Third-Party Defendant GILSTON is not limited to the negligence of GILSTON or its subcontractors. Section 7 provides in part:

> "To the fullest extent permitted by law, Contractor's duty to indemnify the Indemnitees shall arise whether or not caused in part by the active or passive negligence or other fault of any of the Indemnitees, provided, however, that Contractor's duty hereunder shall not arise to the extent that any such claim, damages, loss or expense was caused by the sole negligence of the Indemnitees or an Indemnitee....The Contractor acknowledges that specific consideration has been received by it for this indemnification..."

Pursuant to this clause, Third-Party Defendant GILSTON must indemnify Defendants NYU and TISHMAN even if they were negligent, as long as they were not solely negligent.

9

[* 9]

As it is clear that Defendants NYU and TISHMAN were not solely negligent for the causing of the injuries alleged by Plaintiff, Third-Party Defendant GILSTON is required to indemnify NYU and TISHMAN, even if GILSTON was not negligent.

**NYU and TISHMAN's breach of contract claim**

Defendants NYU and TISHMAN seek summary judgment on their claim against Third-Party Defendant GILSTON for breach of contract and failure to procure insurance.

The contract obligated Third-Party Defendant GILSTON to obtain commercial general liability insurance in connection with its work and to name NYU and Tishman as additional insureds on the policy.

Third-Party Defendant GILSTON argues that a certificate of insurance it submitted, demonstrates that they complied with the requirement to procure insurance for NYU and TISHMAN. Defendants NYU and TISHMAN argue that a certificate of insurance is not proof that a policy was obtained, that GILSTON has not produced the policy and that the letter of denial by the insurer, Harleysville, is evidence that NYU and TISHMAN were not covered as additional insureds under the policy.

The letter of denial states that the policy only covers additional insureds for "liability caused, in whole or in part, by the acts or omissions of the Named Insured, or those acting on behalf of the Named Insured in the performance of the Named Insured's ongoing operations". Third-Party Defendant GILSTON was the named insured under the policy. The insurer concluded that the claims did not arise from the acts of the Named Insured or anyone acting on the Named Insureds behalf.

The basis set forth in the denial is not that Defendants NYU and TISHMAN were not additional insureds or that claims from the project were excluded from the policy. The denial letter only states that it is the conclusion of the insurer that Plaintiff's claims did

10

[* 10]

not arise from the work of Third-Party Defendant GILSTON or anyone acting on its behalf. The letter does not explain the basis for concluding that Defendant VIATECH, the subcontractor of GILSTON, was not acting on GILSTON's behalf, or how Plaintiff's claims did not arise from VIATECH's work. There has yet to be an adjudication as to whether the policy covers Defendants NYU and TISHMAN for Plaintiff's claims.

For these reasons, Third-Party Defendant GILSTON has not met its burden for summary judgment dismissing the claim of failure to procure insurance.


**VIATECH's motion**

Defendant VIATECH moves for summary judgment dismissing Plaintiff's claims.

For the reasons stated above, Defendant VIATECH is entitled to summary judgement dismissing Plaintiff's claims pursuant to Labor Law § 240(1) but is not entitled to summary judgment dismissing his claims pursuant to Labor Law § 241(6).

As regards Plaintiff's claims pursuant to Labor Law § 200, Defendant VIATECH argues first, that its workers were not welding at the time Plaintiff's claims he was injured, second, even accepting Plaintiff's version, that his injuries were caused by Plaintiff entering the welding area which he was not permitted to enter, and third, VIATECH did not control Plaintiff's work.

As to the first argument, as discussed above, Plaintiff testified that Defendant VITECH's workers were welding on the afternoon of September 8, 2017 at the time he was exposed to toxic fumes. His deposition testimony is sufficient to raise a question of fact that must be determined by a jury.

Second, Plaintiff's claim is that he was exposed to toxic fumes entering the hallway where he was working for five to ten minutes before he entered the welding area to tell the welders to stop. Therefore he was not the sole cause of his injuries.

11

[* 11]

Third, while Defendant VIATECH did not supervise and control Plaintiff's work, it is liable for the work of its welders, which Plaintiff alleges caused him to be exposed to toxic fumes in the corridor.

For these reasons, Defendant VIATECH has not made out its burden to dismiss Plaintiff's claim against it pursuant to Labor Law § 200.

WHEREFORE, it is hereby ORDERED that Plaintiff's motion for summary judgment is Denied; and it is further,

ORDERED, that that part of the motion of Defendants NYU LANGONE HOSPITALS f/k/a NYU HOPITALS CENTER, NEW YORK UNIVERSITY and TISHMAN CONSTRUCTION CORPORATION for summary judgment dismissing Plaintiff's claims pursuant to Labor Law §240(1) is Granted; and it is further,

ORDERED, that that part of the motion of Defendants NYU LANGONE HOSPITALS f/k/a NYU HOPITALS CENTER, NEW YORK UNIVERSITY and TISHMAN CONSTRUCTION CORPORATION, for summary judgment dismissing Plaintiff's claims pursuant to Labor Law § 241(6)and Labor Law § 200 is Denied; and it is further,

ORDERED, that that part of the motion of Defendants NYU LANGONE HOSPITALS f/k/a NYU HOPITALS CENTER, NEW YORK UNIVERSITY and TISHMAN CONSTRUCTION CORPORATION for summary judgment against Third-Party Defendant GILSTON ELECTRICAL CONTRACTING LLC on their claim for contractual indemnification is Granted; and it is further,

ORDERED, that that part of the motion of Defendants NYU LANGONE HOSPITALS f/k/a NYU HOPITALS CENTER, NEW YORK UNIVERSITY and TISHMAN CONSTRUCTION CORPORATION for summary judgment against Third-Party Defendant GILSTON ELECTRICAL CONTRACTING LLC on their claim for breach of contract for failure to procure insurance is Denied; and it is further,

12

ORDERED that that part of Defendant VITATECH ELECTROMAGNETICS LLC's motion for summary judgment dismissing Plaintiff's claims pursuant to Labor Law § 240(1) is Granted; and it is further,

ORDERED that that part of Defendant VITATECH ELECTROMAGNETICS LLC's motion for summary judgment dismissing Plaintiff's claims pursuant to Labor Law § 241(6) and Labor Law § 200 is Denied.

This constitutes the Decision and Order of this Court.

E N T E R:

_____
JSC

13