**Sosa v 310 Group LLC**

2024 NY Slip Op 32425(U)

July 12, 2024

Supreme Court, New York County

Docket Number: Index No. 157148/2017

Judge: Alexander M. Tisch

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:  **HON. ALEXANDER M. TISCH**

*Justice*

PART  **18**

-------------------------------------------------------------X

GENARO SOSA,

Plaintiff,

- v -

310 GROUP LLC, METRO NYC SERVICES INC., STRUCTURETECH NEW YORK INC., PRESS BUILDERS, INC.,

Defendant.

-------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 157148/2017 |
| MOTION DATE | 11/17/2022 |
| MOTION SEQ. NO. | 006, 007 |

**DECISION + ORDER ON MOTION**

310 GROUP LLC, METRO NYC SERVICES INC.

Plaintiff,

-against-

PRESS BUILDERS, INC.

Defendant.

-------------------------------------------------------------X

Third-Party
Index No. 595066/2019

STRUCTURETECH NEW YORK INC.

Plaintiff,

-against-

PRESS BUILDERS, INC.

Defendant.

-------------------------------------------------------------X

Second Third-Party
Index No. 595115/2019

PRESS BUILDERS, INC.

Plaintiff,

-against-

CENTRIFUGAL ELECTRIC, LLC

Defendant.

-------------------------------------------------------------X

Third Third-Party
Index No. 595115/2020

[* 1]

The following e-filed documents, listed by NYSCEF document number (Motion 006) 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 269, 270, 271, 272, 273, 274, 275, 276, 277, 286, 287, 292, 293, 294, 298, 299, 301, 303, 304

were read on this motion to/for _____ JUDGMENT - SUMMARY _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 289, 290, 291, 295, 296, 297, 300, 302, 305

were read on this motion to/for _____ JUDGMENT - SUMMARY _____ .

## I.    BACKGROUND

This action was brought by plaintiff Genaro Sosa, a construction worker who tripped over an electrical cord which had been left out and sustained an injury while he worked on site on a construction project at 310 West 40th Street, New York, New York (the Premises). Defendant 310 Group LLC (310) states it was the developer of the project. Defendant Metro NYC Services, Inc. (Metro) states it was the general contractor on the project. Plaintiff alleges defendant 310 hired defendants Metro, Structuretech New York (Structuretech), Press Builders, Inc., (Press), and Centrifugal Associates Group LLC (Centrifugal), to work on the project. Plaintiff worked for Centrifugal as a foreman.

In the Second Amended Verified Complaint (NYSCEF Doc. No. 98), plaintiff asserts claims against 310, Metro, Structuretech, and Press sounding in negligence (Claims 1-3), New York Labor Law § 200 and 241(6) and Rule 23 of the Industrial Code of the State of New York (Claim 4). 310 Group and Metro (the Third Party Plaintiffs) filed a Third Party Verified Complaint (NYSCEF Doc. No. 71) against Press in which the Third Party Plaintiffs allege Press was required to indemnify the Third Party Plaintiffs for claims arising out of Press's work or the project, in general, pursuant to its contract with Metro. Third Party Plaintiffs assert claims against Press seeking declaratory judgment that Press must indemnify Third Party Plaintiffs, and

for contribution or indemnification, and for breach of contract for failing to obtain insurance. Structuretech filed the Verified Second Third-Party Complaint against Press (NYSCEF Doc. No. 86) for claims sounding in common law indemnity, contribution, contractual indemnification, and breach of contract for Press's failure to obtain liability insurance. Press then filed the Third Third Party Complaint (NYSCEF Doc. No. 116) asserting claims against Centrifugal for contractual indemnification, common law indemnification or contribution, breach of contract for Centrifugal's failure to obtain insurance, and breach of Centrifugal's agreement with the general contractor on the project for Centrifugal's failure to obtain required insurance. Press also asserted cross claims (NYSCEF Doc. No. 107) against 310 Group, Metro, Structuretech, and ZDG, LLC (the former construction manager), sounding in common law indemnification and or contribution, comparative negligence, contractual indemnification, and breach of contract for failure to obtain required insurance. ZDG has been dismissed from this action (NYSCEF Doc. No. 92).

## II.  STANDARD

The standards for summary judgment are well settled. Summary judgment is a drastic remedy which will be granted only when the party seeking summary judgment has established that there are no triable issues of fact (*see* CPLR 3212 [b]; *Alvarez v Prospect Hosp.,* 68 NY2d 329 [1986]; *Sillman v Twentieth Century-Fox Film Corporation,* 3 NY2d 395 [1957]). To prevail, the party seeking summary judgment must make a prima facie showing of entitlement to judgment as a matter of law tendering evidentiary proof in admissible form, which may include deposition transcripts and other proof annexed to an attorney's affirmation (*see Alvarez v Prospect Hosp., supra; Olan v Farrell Lines,* 64 NY2d 1092, 1093 [1985]; *Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]). Absent a sufficient showing, the court should deny the

**157148/2017  SOSA, GENARO vs. 310 GROUP LLC**
**Motion No.  006, 007**

motion without regard to the strength of the opposing papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

Once the initial showing has been made, the burden shifts to the party opposing the motion for summary judgment to rebut the prima facie showing by producing evidentiary proof in admissible form sufficient to require a trial of material issues of fact (*see Kaufman v Silver*, 90 NY2d 204, 208 [1997]). Although the court must carefully scrutinize the motion papers in a light most favorable to the party opposing the motion and must give that party the benefit of every favorable inference (*see Negri v Stop & Shop*, 65 NY2d 625, 626 [1985]) and summary judgment should be denied where there is any doubt as to the existence of a triable issue of fact (*see Rotuba Extruders, v Ceppos*, 46 NY2d 223, 231 [1978]), bald, conclusory assertions or speculation and "[a] shadowy semblance of an issue" are insufficient to defeat a summary judgment motion (*S.J. Capalin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338, 341 [1974]; *see Zuckerman v City of New York, supra; Ehrlich v American Moninger Greenhouse Mfg. Corp.*, 26 NY2d 255, 259 [1970]).

Lastly, "[a] motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (*Ruiz v Griffin*, 71 AD3d 1112, 1115 [2d Dept 2010], quoting *Scott v Long Is. Power Auth.*, 294 AD2d 348, 348 [2d Dept 2002]).

### III.    MOTION SEQUENCE 006

In Motion Sequence 006, Press moves for summary judgment dismissing all claims and cross-claims against it and granting summary judgment on its claim for indemnification against Centrifugal. Plaintiff Sosa cross-moves seeking partial summary judgment in plaintiff's favor on the Labor Law § 241(6) claim. Preliminarily, plaintiff argues the motion is defective for its

failure to attach the Second Amended Complaint, as required by CPLR section 3212(b) ("A motion for summary judgment shall be supported by affidavit, by a copy of the pleadings and by other available proof"). Press cured this defect by attaching the required pleadings to its reply papers, allowing the court to overlook the procedural defect (*see Welch v Hauck*, 18 AD3d 1096, 1098 [3d Dept 2005], *lv. denied* 5 NY3d 708 [2005]; *see Ayer v Sky Club, Inc.*, 70 AD2d 863, 864 [1st Dept. 1979] [parties permitted to supplement the record by submitting a copy of the pleadings], appeal dismissed 48 NY2d 705 [1979]). The record is sufficiently complete, despite movant's failure to attach all of the pleadings, as they are available from the materials submitted (*see e.g. Studio A Showroom, LLC v Yoon*, 99 AD3d 632 [1st Dept 2012] [pleadings filed electronically were available for the court's consideration], *Pandian v New York Health and Hospitals Corp.*, 54 AD3d 590, 591 [1st Dept. 2008] [pleadings were attached to reply papers]; *Welch*, 18 AD3d at 1098 [cross motion not fatally defective where pleadings were attached to primary motion]) and available on NYSCEF.

### A.   Plaintiff's Claims Against Press

#### 1.   Negligence and Labor Law § 200 claims

Labor Law § 200 is a "'codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work'" (*Cruz v Toscano*, 269 AD2d 122, 122 [1st Dept 2000] [citation omitted]). Labor Law § 200 (1) states:

> "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons."

As an initial matter, Press contends it lacked the authority to supervise and control the work, so it is not a proper Labor Law or negligence defendant and Labor Law liability does not apply to it.

> "When the work giving rise to these [Labor Law] duties has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor. Only upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241."

(*Russin v Louis N. Picciano & Son*, 54 NY2d 311, 318 [1981]; *see also Nascimento v Bridgehampton Constr. Corp*, 86 AD3d 189, 193 [1st Dept 2011] [an entity becomes a statutory agent under the Labor Law when it has been "delegated the supervision and control either over the specific work area involved or the work which [gave] rise] to the injury"] internal quotation marks and citation omitted]). Press is not an owner or a general contractor. Press contends that, as a construction manager, it has only general supervisory powers and no control over how the laborers perform their work (*Hughes v Tishman Const. Corp.*, 40 AD3d 305, 306 [1st Dept 2007] ["liability cannot be imposed on an owner or general contractor unless it is shown that it exercised some supervisory control over the work"]). "It is well settled that an implicit precondition to th[e] duty [to maintain a safe construction site] is that the party to be charged with that obligation 'have the *authority to control the activity bringing about the injury to enable it to avoid* or correct an unsafe condition' " (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998], quoting *Russin v Louis N. Picciano & Son*, 54 NY2d 311, 317 [1981]). General supervisory authority is insufficient to constitute supervisory control; it must be demonstrated that the contractor controlled *the manner in which the plaintiff performed his or her work*, i.e.,

how the injury-producing work was performed" (*Hughes v Tishman Const. Corp.*, 40 AD3d 305, 306 [1st Dept 2007]).

While Press admits to having "supervisory authority," it denies having "supervisory control" and points to the Construction Management Agreement between Press and Metro (Exhibit Y to Affirmation of Megan E. Yllanes filed in Motion Sequence 007, NYSCEF Doc. No. 186). According to the CMA, Press was contracted to provide project management and construction consulting services as Construction Manager, to Metro's General Contractor.

Plaintiff does not argue against the dismissal of this claim in its opposition to Press's motion. Therefore, the portion of the motion seeking summary judgment dismissing plaintiff's claim against Press brought pursuant to common law negligence and Labor Law § 200 is granted.

### 2.   Plaintiff's Claim Pursuant to Labor Law § 240 (1)

Labor Law § 240 (1), known as the Scaffold Law, provides:

> "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work" (*Quiroz v Memorial Hosp. for Cancer & Allied Diseases*, 202 AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application

of the force of gravity to an object or person'" (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

The absolute liability found within section 240 "is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*O'Brien v. Port Auth. of N.Y. & N.J.*, 29 NY3d 27, 33 [2017] [internal quotation marks and citation omitted]). In addition, Labor Law § 240 (1) "must be liberally construed to accomplish the purpose for which it was framed" (*Valensisi v Greens at Half Hollow, LLC*, 33 AD3d 693, 695 [2d Dept 2006] [internal citations omitted]).

That said, not every worker who is injured at a construction site is afforded the protections of Labor Law § 240 (1), and "a distinction must be made between those accidents caused by the failure to provide a safety device . . . and those caused by general hazards specific to a workplace" (*Makarius v Port Auth. of N.Y. & N. J.*, 76 AD3d 805, 807 [1st Dept 2010]; *Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept 2007] [section 240 (1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site"]). Instead, liability "is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

To prevail on a Labor Law § 240 (1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]). Neither the Second Amended Verified Complaint (NYSCEF Doc. No. 98) nor the plaintiff's submissions in opposition to this motion make any allegations about a failure to provide sufficient "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, or other devices" for the protection of the

[* 8]

plaintiff, resulting in the injury at issue (Labor Law § 240[1]). Nor are there any allegations or issues of material fact that the plaintiff's alleged injury resulted from an elevation related risk (*Toefer v Long Is. R.R.*, 4 NY3d 399, 405 [2005]). This statute does not allow recovery for the "usual and ordinary dangers of a construction site," such as those alleged here (*Rodriguez v Margaret Tietz Ctr. for Nursing Care, Inc.*, 84 NY2d 841, 843 [1994]). Therefore, the portion of Press's motion seeking summary judgment dismissing the plaintiff's claim brought pursuant to Labor Law § 240 (1) is granted and that claim is dismissed as against Press.

### 3. Plaintiff's Claim Pursuant to Labor Law § 241(6)

Labor Law § 241 (6) provides:

> "All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> * * *
>
> (6) All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]; *see also Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY2d at 501–502).

To sustain a Labor Law § 241 (6) claim, it must be established that the defendant violated a specific, "concrete" implementing regulation of the Industrial Code, rather than a provision containing only generalized requirements for worker safety (*Ross*, 81 NY2d at 505). violation must be a proximate cause of the plaintiff's injuries (*Yaucan v Hawthorne Vil., LLC*, 155 AD3d

924, 926 [2d Dept 2017] ["a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident"]; *see also Sutherland v Tutor Perini Bldg. Corp.*, 207 AD3d 159, 161 [1st Dept 2022]). "Whether a regulation applies to a particular condition or circumstance is a question of law for the court" (*Harrison v State of New York*, 88 AD3d 951, 953 [2d Dept 2011]).

Press argues the Labor Law 241(6) claim should be dismissed because plaintiff has failed to allege a specific violation of the Industrial Code required for this statute to apply and OSHA violations do not create liability pursuant to Labor Law § 241(6). In its opposition to the motion, plaintiff Sosa clarifies that there was a violation of ICR § 23-1.7(e)(1) and (2), in that Press had the responsibility to keep the area clear of tripping hazards but failed to do so, creating liability pursuant to Labor Law § 241(6). Press concedes that this claim survives its motion for summary judgment as it pertains to violations of ICR § 23-1.7(e)(1) and (2).

### B. Cross-Claims against Press

310 Group and Metro asserted cross-claims against Press for: (1) indemnification pursuant to the contract between Press and Metro; (2) contribution and common-law indemnification; and (3) breach of contract, for failure to procure the insurance required by the contract between Press and Metro.

### 1. 310/Metro claims for contribution, common law indemnification

Press moves for summary judgment dismissing the cross claim for contribution and common law indemnification. "To establish a claim for common-law indemnification, 'the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some

negligence that contributed to the causation of the accident'" (*Perri v Gilbert Johnson Enters., Ltd.,* 14 AD3d 681, 684-685 [2d Dept 2005], quoting *Correia,* 259 AD2d at 65). "Contribution is available where two or more tortfeasors combine to cause an injury and is determined in accordance with the relative culpability of each such person" (*Godoy v Abamaster of Miami,* 302 AD2d 57, 61 [2d Dept 2003] [internal quotation marks and citations omitted]).

Press argues that since a Centrifugal employee, Terry Hall, left the electrical cord out and Press had no obligation to inspect the property pursuant to its agreement with Metro (the CMA), Press is not liable for any negligence, and so has no obligation for contribution. Similarly, Press claims not to be liable for common law indemnification because Centrifugal has direct liability for the injury and Press did not supervise or control Centrifugal employees (Deposition Testimony of Genaro Sosa, attached as Ex P to motion, NYSCEF Doc. No. 213, p 132; Deposition Testimony of Abe Noy, Ex S to motion, NYSCEF Doc. No. 216, pp 79-80). In fact, Press contends it was prohibited by the CMA from controlling the actions of Metro's subcontractors. Press provides evidence Centrifugal was aware of Hall's safety violations and failed to take action until after plaintiff was injured (Daily Log, attached as Ex CC to Motion , NYSCEF Doc. No. 226). Press states it was barred from supervising the contractors and 310 Group failed to do so.

310 Group, Metro, and Centrifugal (the Opposing Parties) argue Press's motion must fail because Press has failed to make a prima facie case it was not negligent and Opposing Parties were. Opposing Parties also argue Press was effectively the general contractor. Mr. Noy, owner of Metro and a member of 310, states that he was the only person from either of those companies onsite and he did not monitor or control the work (Aff of Abe Noy, filed in Motion Seq. No. 007, NYSCEF Doc. NO. 194). the evidence cited by Sosa from the testimony of Mr. Noy, Opposing

Parties cite to the affidavit of Mr. Thomas Socha, Press's Construction Superintendent, who testified that Press supervised the subcontractors, was responsible for safety on the jobsite, and had the authority to stop work if its employees observed unsafe work (Attached as Exhibit T to Affirmation of Adam J. Kipnis, NYSCEF Doc. No. 217 at 13, 15-16, 31).

As there is a disputed issue of material fact as to Press's role at the job site, and what Press's obligations were regarding supervising workers and workplace safety, Press's motion for summary judgment on the cross-claims against it by 310 Group and Metro for contribution and common law indemnification fail.

### 2. 310 Group/Metro claims for contractual indemnification

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018], quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]). "In contractual indemnification, the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability" (*Correia v Professional Data Mgt.*, 259 AD2d 60, 65 [1st Dept 1999]; *see also Lexington Ins. Co. v Kiska Dev. Group LLC*, 182 AD3d 462, 464 [1st Dept 2020][denying summary judgment where indemnitee "has not established that it was free from negligence"]). Further, unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia*, 259 AD2d at 65).

Press explains the only indemnification agreement it signed was in the CMA with Metro and Centrifugal is not entitled to indemnification based on that agreement. Press also argues the

indemnification clause in the CMA is unenforceable because it violates General Obligations Law § 5-322.1, which states an agreement exempting owners and contractors for liability for their own negligence is unenforceable, citing *Brooks v Judlau Contr., Inc.* (11 NY3d 204, 207 [2008]). Further, Press contends, the clause in the CMA contract is fatally flawed because it indemnifies Metro of its own ordinary negligence and lacks the saving language identified by *Brooks*.

Opposing Defendants argue the clause is not rendered unenforceable by General Obligations Law § 5-322.1 when there is no evidence in this instance that the parties seeking to enforce the clause were at fault. (*Brown v Two Exch. Plaza Partners*, 76 NY2d 172, 180 [1990]). As Press has not brought evidence to establish a prima facie case for 310 or Metro's fault, they argue the contractual indemnity claim should survive summary judgment.

Third party defendants are correct that the First Department has held an indemnification clause without the limitation language is still valid, even though it violates the rule in General Obligations Law § 5–322.1, if the indemnitee is not negligent (*Sande v Trinity Ctr. LLC*, 206 AD3d 441, 442 [1st Dept 2022]; *Higgins v TST 375 Hudson, L.L.C.*, 179 AD3d 508, 511 [1st Dept 2020]). There are issues of fact about which entity had responsibility for overseeing worksite safety and which entities may have been negligent. Therefore, Press' motion for summary judgment on the contractual indemnification claim fails.

### 3. Breach of Contract for Failure to Obtain Liability Insurance

Press argues that, as far as the insurance requirement is enforceable, Press fulfilled the terms of its contract regarding insurance, as it was only required to obtain insurance coverage to protect Metro and 310 Group from claims arising from Press's work, which it did. There is evidence in the record that shows Press did obtain insurance, Colony's reservation of rights

letter, filed by 310 Group and Metro (Attachment B to Yllanes Aff., NYSCEF Doc. No. 230). Press claims Metro and 310 Group misinterpret the language of the agreement to require Press to provide insurance covering the actions of their own subcontractor. That obligation fell to Metro. 310 Group and Metro contend the indemnification clause in the Press contract is enforceable because while General Obligations Law § 5-322.1 does not allow 310 Group and Metro to be protected from their own negligence, they could not have been negligent here, because it was not their obligation to oversee the work site.

The reservation of rights letter from Colony shows Press had obtained insurance. It does not establish, however, whether the insurance purchased fulfils the requirements of the CMA. It is also, as discussed above, a disputed issue of material fact what Press's responsibilities were at the site, whether Press or Metro was responsible for supervising workers and monitoring safety issues at the site, and who, if anyone, was negligent. Therefore, the portion of the motion seeking summary judgment dismissing the claim for breach of contract for failure to obtain insurance is also denied.

## C.     Press's claim against Centrifugal for indemnification.

Press also moves for summary judgment on its claim for contractual or common-law indemnification against Centrifugal. Press claims to be a third-party beneficiary of Centrifugal's contract with ZDG as that agreement classifies ZDG, the original construction manager, and its successors as indemnitees. (Subcontractor Agreement, attached as Exhibit BB to the Affidavit of Adam J. Kipnis, NYSCEF Doc. No. 225). Metro signed an Assumption and Assignment of Contract with Centrifugal as "Owner's new Contractor/Construction Manager" (see Ex Z). That contract was assigned to Metro but Press claims to be the new construction manager and successor to ZDG (Raymond Hanratty Tr. of 7/20/21, attached as Exhibit R to the Affidavit of

Adam J. Kipnis, NYSCEF Doc. No. 215, at 19-20). Therefore, Press claims section 22.1 of the Subcontractor Agreement requires Centrifugal to defend and indemnify Press, as the new construction manager. Alternatively, Press argues it is a consultant, which Centrifugal was also obligated to indemnify. Therefore, Press claims it is entitled to contractual indemnification for Centrifugal's negligence in failing to more closely supervise Terry Hall, who left out Centrifugal's extension cord, after receiving notice of the risks he created. Alternatively, Press seeks common law indemnification from Centrifugal, arguing Press did not have supervisory responsibilities over either Terry Hall who left out the cord or the plaintiff who tripped on it, so Press is not a wrongdoer here and Centrifugal owes it common law indemnification.

Centrifugal contends Press's common law indemnification claim is barred by New York Workers' Compensation Law § 11, which limits Centrifugal's liability to the worker's compensation insurance benefits it provided Soto and states generally, "[a]n employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury.'" As plaintiff only suffered a hip fracture and knee tear, he did not sustain a grave injury. According to Centrifugal, the Subcontractor Agreement was assumed by Metro, which was named the "new Contractor/Construction Manager" replacement construction manager, according to the Assignment, and so Metro would be a beneficiary of its terms, rather than Press (Assignment to Metro, Ex Z to Kipnis Aff, NYSCEF Doc. No. 223). Centrifugal argues Press is also neither a third party beneficiary of the Subcontractor Agreement nor ZDG's successor in interest.

Press contends that the agreement between Metro and Press conveyed the role of construction manager to Press, and the contractual right to indemnification with it. Alternatively, Press points out it is a consultant, which is another category of contractor entitled to indemnification under the Subcontractor Agreement.

As there are disputed issues of material fact regarding Press's status and responsibilities for the project, and thus disputes about which parties were negligent, Press' motion seeking summary judgment against Centrifugal on the indemnification claims is denied.

### D. Plaintiff's Cross-Motion for Summary Judgment on the Labor Law § 241(6) claim

Plaintiff Sosa cross-moves for summary judgment on his claims against 310 Group, Metro, and Press brought pursuant to Labor Law § 241(6), which provides:

> "All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: . . .
> 6. All areas in which construction, excavation or demolition work is being performed shall be . . . operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

Sosa argues the site failed to provide "reasonable and adequate protection and safety" because it violated the Industrial Code of the State of New York § 23-1.7(e), which states:

> "(e) Tripping and other hazards.
> (1) Passageways. All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping."

Press argues first that plaintiff Sosa has never asserted a Labor Law § 241(6) claim against Press, but the Second Amended Verified Complaint does allege "defendants violated" that statute. While Press is not named specifically, there is a colorable argument that the claim was asserted against all named defendants. Press then argues that if the claim survives Press's

motion for summary judgment, plaintiff's motion for summary judgment must fail because there is no evidence Mr. Hall left the electrical cord on the floor in the hallway for any particular amount of time, and there is an issue of act as to whether the cord was an "integral part of the work being performed" (McDonagh v Victoria's Secret, Inc., 9 AD3d 395, 396-97 [2d Dept 2004]). Here, there are issues of disputed material fact as to whether the dangerous condition was avoidable or "inherent to the task at hand" (*Bazdaric v Almah Partners LLC*, 41 NY 3d 310, 320 [2024]). Accordingly, the plaintiff's cross-motion for summary judgment is denied.

## IV. Motion Sequence 007

In Motion Sequence 007, 310 Group, Metro, and Centrifugal move together for summary judgment dismissing plaintiff's Labor Law § 200 common law negligence claim and plaintiff's labor law § 240(1) claim, granting the movants summary judgment on their indemnification counterclaims against Press, dismissing Press's common law indemnification crossclaim and counterclaim against movants, and dismissing Press's claims against Centrifugal for contractual indemnification, breach of contract, and common law indemnification and contribution.

### A. Sosa's Labor Law § 200/ Common Law Negligence Claim

Movants contend that for this claim to succeed against a property owner or general contractor, a plaintiff must show the property owner or general contractor either created the dangerous condition or had actual or constructive notice of the condition (Garcia v DPA Wallace Ave. I, LLC, 101 AD3d 415, 417 [1st Dept 2012]). However, *Garcia* provides for liability to accrue to the person "with authority to control the activity bringing about the injury" (*id.*). Here, it is undisputed the extension cord belonged to Centrifugal and was left on the floor by a Centrifugal employee (Memo, NYSCEF Doc. No. 159, at para 33, Exhibits "U" at 25:20-25, 31:10-14 and "J" at 40:10-15; Noy Affidavit, ¶8). However, the roles of the movants on site are

disputed and issues of fact remain, as discussed above. Therefore, this portion of the motion is granted and the plaintiff's claim pursuant to Labor Law § 200/common law negligence will survive.

### B. Sosa's Labor Law § 240(1) Claim

As discussed above, Labor Law § 240(1), the Scaffold Law, does not apply to this case, as there was no hazard of the type contemplated by that law and no failure to use the corresponding scaffolding, harness, or other gear. This portion of the motion is granted, and this claim dismissed as against movants.

### C. Contractual Indemnification Claims between Metro/310 and Press

Movants seek summary judgment on their claim against Press for contractual indemnification pursuant to the Construction Management Agreement between Metro, as General Contractor, and Press, as Construction Manager, dated December 15, 2016 (CMA, attached as Exh Y to the Affirmation of Megan Yllanes, NYSCEF Doc. No. 159). Movants rely on Article 9 of the CMA, which provides:

> "PRESS agrees to indemnify, defend and hold harmless METRO, 310 Group, LLC, Helm Management, Inc. and their respective members, officers, directors, employees, representatives, and agents (collectively, the "Indemnified Parties"), against any and all claims, losses, damages, liabilities costs or expenses (including, without limitation, attorney's fees and costs of litigation and or settlement, whether incurred as a result of a claim by a third party or an indemnitee hereunder) arising out of the Services performed pursuant to this Agreement or occurring in connection with the Project or the construction of the Project, except to the extent arising out of the gross negligence or willful misconduct of the Indemnified Party that is seeking to be indemnified."

Movants contend plaintiff's injury occurred in connection with the Project, so movants should be indemnified by Press, regardless of whether any party's negligence can be established.

Press argues movants misinterpret the clause and points out that the indemnification requirements are mutual. That section later states that

"METRO agrees to indemnify, defend and hold harmless PRESS and their respective officers, directors, employees, representatives, and agents against any and all claims, losses, damages, liabilities, costs or expenses (including, without limitation, attorney's fees and costs of litigation and or settlement) arising out of the actions of METRO pursuant to this Agreement, except to the extent arising out of the gross negligence at willful misconduct of PRESS."

"The fundamental rule of contract interpretation is that agreements are construed in accord with the parties' intent . . . and '[t]he best evidence of what parties to a written agreement intend is what they say in their writing' . . . . Thus, a written agreement that is clear and unambiguous on its face must be enforced according to the plain terms, and extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous [internal citations omitted]" (*Riverside South Planning Corp. v CRP/Extell Riverside LP,* 60 AD3d 61, 66 [1st Dept 2008], *affd* 13 NY3d 398 [2009]). Whether a contract is ambiguous presents a question of law for resolution by the courts (*id.* at 67).

In accordance with these principles, a court should interpret a contract "so as to give full meaning and effect to the material provisions" (*Beal Savings Bank v Sommer*, 8 NY 3d 318, 324 [2007], quoting *Excess Ins. Co. Ltd. v Factory Mut. Ins. Co.*, 3 NY3d 577, 582 [2004]). "A reading of a contract should not render any portion meaningless . . . . Further, a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose" (*id.* at 324-325, quoting *Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003]).

The sentence at issue, "claims . . . arising out of the Services performed pursuant to this Agreement or occurring in connection with the Project" has a grammatical ambiguity, whether

"occurring in connection with the Project" modifies "claims" or "Services." Movants effectively argue it modifies "claims." Using movants' interpretation, Press would indemnify Metro for any claims "occurring in connection with the Project," which would render the prior phrase meaningless, as the requirement for Press to indemnify Metro for claims "arising out of the Services performed pursuant to this Agreement" would be totally subsumed. Movant's interpretation would also conflict with the remainder of that section of the CMA, in which Metro agrees to indemnify Press for claims "arising out of the actions of METRO pursuant to this Agreement." The interpretation which gives the terms of the indemnification section full force and effect without making any portion meaningless is to interpret "occurring in connection with the Project" to modify "Services," so Press provides indemnification for claims arising from its services under the CMA or other services Press provides related to the Project. Therefore, this portion of movants' motion for summary judgment is denied.

**D.      Common Law Indemnification**

Movants seek summary judgment dismissing Press's cross and counterclaims against defendants for common law indemnification. "[I]n the case of common-law indemnification, the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident for which the indemnitee was held liable to the injured party by virtue of some obligation imposed by law, such as the nondelegable duty imposed by Labor Law § 240 (1)" (*Correia v Professional Data Mgt., Inc.*, 259 AD2d 60, 65 [1st Dept 1999]). As discussed above, issues of fact exist as to whether movants were negligent, therefore their motion for summary judgment dismissing these claims is denied.

### E. Dismissing Contractual Indemnification Claims Against Centrifugal

Press claims to be entitled to indemnification from Centrifugal pursuant to the subcontract between ZDG LLC and Centrifugal. Movants seek summary judgment on this claim on the ground that Press is neither a named beneficiary nor an intended third-party beneficiary of Centrifugal's subcontract. Press argues the Centrifugal/ZDG agreement, (attached as Ex. BB to Opposition, NYSCEF Doc. No. 264), required Centrifugal to indemnify or cover as additional insureds a list of parties, including the "CM" or construction manager (*Id.* ¶ 109). Press explains that ZDG was the construction manager at that time, and the counterparty to that agreement, but that Press took over that position and so was entitled to that indemnification. Press also relies on a Certificate of Liability Insurance naming Centrifugal as the named insured and Press as an additional insured (Ex. FF to Opposition, NYSCEF Doc. No. 268), and the deposition testimony of Raymond Hanratty in which Hanratty confirms Press is listed on an insurance certificate as an additional insured (attached as Ex R to Opposition, NYSCEF Doc. No. 254, pp 35-9). Defendants contend Metro took over the subcontract with Centrifugal and was the new Construction Manager and that Metro acquired ZDG's rights, not Press. As discussed above, there are disputed issues of fact regarding Press' role in the project. Therefore, material issues of fact exist and the motion for summary judgment on this claim is denied.

### F. Common Law Indemnification/Contribution Claims against Centrifugal

Movants seek summary judgment dismissing Press's common law indemnification and contribution claims against Centrifugal for the portion of plaintiff's damages that were caused by Centrifugal. They point out that plaintiff filed for Workers' Compensation benefits, so was barred from suing his employer pursuant to New York Workers' Compensation Law and argue that Centrifugal only has liability to third parties, such as Press, when the plaintiff was gravely

injured or the employer and the third party had a written contract for indemnification or contribution (New York Workers' Compensation Law § 11). Movants argue that plaintiff's injuries do not qualify as grave, entitling Centrifugal to the protection of the Workers' Compensation Law. Press points to the subcontractor agreement between ZDG and Centrifugal, which provides for indemnification but not contribution, to which Press claims to be a successor for ZDG.

The language in the Workers' Compensation Law § 11 gives an employer an exemption from liability for contribution or indemnity, except those terms

> "shall not include a claim or cause of action for contribution or indemnification based upon a provision in a written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant or person asserting the cause of action for the type of loss suffered"

(Workers' Compensation Law § 11). This clause exempts Centrifugal, the plaintiff's employer, from common law, but not contractual, claims for indemnification and contribution. Therefore, this portion of the motion for summary judgment is granted and the claim for common law indemnification and contribution is dismissed.

## V.    CONCLUSION

For the reasons discussed above it is hereby

ORDERED that Press Builders, Inc.'s Motion for Summary Judgment (006) is hereby granted in part and denied in part in that, in the plaintiff's claim brought pursuant to Labor Law § 200 is dismissed, his claim brought pursuant to Labor Law § 240(1) is dismissed, and his claim brought pursuant to Labor Law § 241(6) survives as far as it is brought pursuant to ICR § 23-1/7 (e) (1)and (2) and otherwise dismissed. Further, the cross-claims brought against Press by 310,

Metro, and Centrifugal survive, except for the claim brought by Centrifugal for contractual indemnification, which is dismissed. And it is further

ORDERED that the cross-motion made by plaintiff (006) for summary judgment on the claim brought pursuant to Labor Law § 241(6) is hereby denied and the claim will survive. And it is further

ORDERED that the motion made by 310, Metro, and Centrifugal (007) is granted in part and denied in part in that the portion of the motion seeking summary judgment dismissing the plaintiff's Labor Law §240(1) claim and the portion of the motion seeking summary judgment dismissing Press's common law indemnification and contribution claims against Centrifugal are granted and those claims are dismissed and the motion is otherwise denied.

This constitutes the decision and order of the Court.

| 7/12/2024 | | ALEXANDER M. TISCH, J.S.C. |
|-----------|--|----------------------------|
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|------------|--|---------------|--|---|----------------------|--|--|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 23]